JOHN E. JOHNSON, APPELLEE, V.
SHARON C. JOHNSON, APPELLANT.

307 N.W.2d 783

Filed July 2, 1981.   No. 43269.

Winner, Nichols, Meister & Douglas, P.C., for appellant.

Martin, Mattoon, Matzke & Mattoon for appellee.

Heard before KRIVOSHA, C.J., McCOWN, BRODKEY, and HASTINGS, JJ., and HICKMAN, District Judge.

HICKMAN, District Judge.

This dissolution of marriage action was commenced on April 25, 1979, in Kimball County, Nebraska, by petitioner husband, John E. Johnson, the appellee herein, who will be referred to as John, against the respondent wife, Sharon C. Johnson, the appellant herein, who will be referred to as Sharon. Trial was held on November 6 and 7, 1979, and the District Court, on December 17, 1979, entered a decree dissolving the marriage, awarding custody of the minor children to Sharon, subject to John's right of reasonable visitation, ordering John to pay $250 per month per child for child support, and dividing the property. This appeal followed. Sharon sets forth 20 assignments of error, but has abandoned 5 assignments, and the remaining 15 can be grouped as follows: The trial court erred (1) in finding that the marriage was irretrievably broken and awarding a dissolution of the marriage rather than a decree of separate maintenance; (2) in awarding Sharon an inequitable division of the property; (3) in failing to award interest on the unpaid balance of the payments ordered; (4) in not awarding Sharon one-half of the value of the prepaid expenses on growing crops; (5) in determining certain values and in making mathematical errors in the court's findings and in the computation of values placed on specified items of real and personal property; (6) in determining that certain gifts were made to the petitioner alone rather than to the parties jointly; (7) in failing to award alimony; (8) in awarding inadequate child support because the award made no provision for an increase in child support as each of the children reaches majority; and (9) in awarding inadequate attorney fees.

John and Sharon were married October 26, 1957,

when they were 20 years and 19 years old, respectively. As a result of the union, five children were born, the first of which died shortly after birth. The remaining four children ranged in age from 12 years to 17 years at the time of trial.

John graduated from high school in 1955, and thereafter served in the Navy for approximately 2 years. Following marriage he commenced farming and has become a successful wheat farmer in Kimball County. After her high school graduation, Sharon worked as a secretary until the marriage, and during the 22 years since has fulfilled her obligations as a loyal and helpful farm wife and mother in the home and on the farms which have been acquired. At trial the health of both parties was not an issue.

The marriage relationship first became strained in 1973 when Sharon learned of John's extramarital activities and confronted him about them. After discussions, Sharon forgave John and they continued to live together, but, according to John, Sharon did not forget and thereafter continually nagged at him and kept track of his activities. According to John, the final straw came in early 1979 when he was locked out of the house after attending a sports function in which his son was involved. Thereafter, John slept in the basement until he acquired a mobile home and moved into it on March 12, 1979. The court ordered the parties to see a marriage counselor. John attended once, and it is obvious that because of his attitude he was told not to come back.

At the trial John stated that he had tried for 6 years following 1973 to reconcile with his wife but that, due to Sharon's attitude and actions, no further efforts were likely to be fruitful. John further stated that he no longer could live with Sharon and that he believed their marriage to be irretrievably broken. Sharon is very active in her church and, following the teachings of her religion, does not believe in divorce. One of the sources of tension in the marriage apparently

was Sharon's strict religious position against artificial birth control. Sharon testified that she did not believe the marriage was irretrievably broken and she said that she and the children would welcome John back into the family home.

On review in this court, the factual determinations of the trial court are entitled to considerable deference. "While in a divorce action the case is to be tried de novo, this court will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of facts rather than the opposite. Patton v. Patton, 203 Neb. 638, 279 N.W.2d 267 (1979). Obviously a trial court weighs the credibility of the witnesses and the evidence and determines what evidence should be given the greater weight in arriving at a factual determination on the merits. The testimony need not be accepted in its entirety and the trier of fact must use a commonsense approach and apply that common knowledge which is understood in the community." *Boroff v. Boroff*, 204 Neb. 217, 218-19, 281 N.W.2d 760, 761-62 (1979).

The trial court found that the marriage was irretrievably broken, relying heavily upon the failure of some 6 years of reconciliation efforts. It is true, as noted above, that the parties disagreed on this question and that their testimony conflicted as to whether their marriage was irretrievably broken. Under the rule stated above, the trial court was entitled to decide which version of the facts to give the greater weight. Apparently the court decided that John's testimony was more credible under the circumstances. Seen in that light, the facts of the case fully justify the trial court's finding that the marriage was irretrievably broken, and that finding is affirmed.

With regard to the division of the marital estate, the trial court determined, based on the evidence, that the total assets owned by the parties at the time this action was commenced had a value of $961,672.92.

The majority of these assets consisted of farmland, wheat on hand or under loan, wheat sold but not paid for, and farm machinery. The court found that John was entitled to have set off to him $139,474.42 as gifts received from his mother. There were debts of $4,750. The parties therefore had disposable marital assets of $817,448.50.

John has built his dryland farming business into an efficient unit and has acquired the proper and necessary farm machinery to handle the large number of acres he owns and leases. The court, rather than destroy the efficiency of the farming unit and leave John without the wheat production required to pay a monetary award, granted Sharon $24,712, consisting of checking and savings accounts, automobiles, and household furnishings; $150,000 cash; and $15,000 per year for a period of 12 years, or a total of $354,712, which constitutes 43 percent of the marital property. The court also imposed upon John an initial child support obligation of $250 per month per child.

This court has consistently held that the rules for determining division of property in an action for dissolution of marriage provide no mathematical formula by which such awards can be precisely determined; they are to be determined by the facts in each case. The court will consider all pertinent facts in reaching an award that is just and equitable. *Matlock v. Matlock*, 205 Neb. 357, 287 N.W.2d 690 (1980). Generally speaking, awards in cases of this kind vary from one-third to one-half the value of the property involved, depending upon the facts and circumstances of the particular case, *Ragains v. Ragains*, 204 Neb. 50, 281 N.W.2d 516 (1979), and particularly so where the marriage is of long duration and the parties are the parents of all the children involved, *Knigge v. Knigge*, 204 Neb. 421, 282 N.W.2d 581 (1979). This court is not inclined to disturb the division of property made by the trial court unless it

is patently unfair on the record. *Ritter v. Ritter*, 205 Neb. 668, 289 N.W.2d 526 (1980). As noted, the general rule in cases such as this is that property awards should range from one-third to one-half of the value of the property involved. In this case, Sharon received an award clearly within those guidelines. It cannot be said that such an award is patently unfair. Accordingly, we affirm the trial court's division of property.

Sharon's third assignment of error is that the trial court failed to award interest on the unpaid balance of the payments ordered.

John and Sharon's taxable income from 1975 through 1978 averaged $27,322. If the average of the annual depreciation for those years, $17,985, is added thereto, they had an average total available of $45,307. The trial court has awarded $15,000 to Sharon per year for 12 years, plus an initial sum of $1,000 per month child support which, we recognize, will decline as each child reaches majority. However, the first year from the aforementioned average, Sharon will receive $27,000. John will have an average of $18,307 with which to operate the farms and live on. Had the court awarded interest on the installment payments at 8 percent per annum, the first year's interest would have been $12,000 and could have created an intolerable burden on John. Furthermore, it is clear that the trial court has the inherent power, in adjusting the rights of the parties in a marriage dissolution proceeding, to provide that a money allowance payable in installments shall not draw interest until payment is due. *Nickel v. Nickel*, 201 Neb. 267, 267 N.W.2d 190 (1978). The trial court did not err in refusing to award interest on the unpaid installments.

Sharon next assigns as error the failure to award her one-half of the value of prepaid farming expenses. Although John farms a large number of acres, one-half of the tillable land is summer-fallowed each year, that is to say, it generally lies idle without a crop to be

harvested, but is prepared for the following year's crop. This requires an outlay of cash for tilling, seed, and planting in the fall of the year next preceding the harvest. At trial John testified that the prepaid expenses on the summer-fallowed land which had been planted were $50,000. Sharon claims that such prepaid expenses amount to an asset which could be included in the total marital property subject to division between the parties. It seems to us that prepaid expenses for preparing the land and for planting a crop which is some 6 to 7 months from harvest should not be considered an asset subject to division between the parties. The primary reason for that result in the circumstances presented by this case is the speculative nature of the expected return on such an expenditure. The trial court was correct in not considering the prepaid expenses as an asset to be divided.

With regard to the alleged errors in values placed on certain parcels of real estate and in the mathematical calculations of the trial court, we find that we must likewise reject this assignment of error. The claimed errors, if indeed such mistakes exist in the record, relate to values of various items and are not of such a serious nature as to render the decision of the trial court incorrect.

Sharon next claims that certain gifts from John's mother were gifts to the parties, and therefore the real value of the gifts, totaling $139,474.42 as found by the trial court, should not have been set off to John.

John has three brothers and three sisters and, in an effort to give each of the children an equal gift of either land or money, John's mother held a family meeting and each child decided whether he or she desired money or land at the value used for federal estate tax purposes in the estate of John's father. When the decision by each child had been made, John's mother would send a check for a specific amount to each of the children desiring land. That child

would in turn deposit the check and issue his or her own check back to the mother for that amount. In this manner the land was paid for through a series of annual gifts and the mother would have sufficient liquid funds to make cash gifts to the children desiring cash instead of land. When John had paid for the first farm from the gifts from his mother, the deed was made out at John's request to both Sharon and himself. Two other farm sites were acquired in this fashion but were deeded to John alone.

The trial court, in making its determination relating to the property division, was entitled to consider the fact that Sharon contributed nothing to the acquisition of these properties and that the source of the funds used to acquire the farms were gifts from John's mother. In an action for dissolution of marriage, a court may divide property between the parties in accordance with the equities of the situation, irrespective of how legal title is held. *Cozette v. Cozette*, 196 Neb. 780, 246 N.W.2d 473 (1976).

In this connection, Sharon also complains that certain U.S. Savings Bonds which John had acquired before marriage and then transferred after marriage into both of their names should not have been set off to him. The bonds were acquired with funds obtained from John's share of a mineral trust set up after the death of his father, under which each child had a one-seventh interest, as well as from direct gifts from his mother. At the time of his marriage, John had $33,000 in savings bonds, less $3,000-$4,000 used to purchase a pickup truck earlier in 1957 which was brought into the marriage. After marriage these bonds were used to build the family home, build a Quonset, and buy machinery. Sharon relies on our statement in *Andersen v. Andersen*, 204 Neb. 796, 798, 285 N.W.2d 692, 694 (1979): "It is apparent that gifts made to another party during the course of a long marriage such as this should appropriately be a part of the

entire marital estate . . . ." Sharon fails to recognize that the bonds placed into her name were cashed shortly after the marriage and the funds were used as previously indicated. Were the bonds still in existence, there would be some merit to her claim.

The record reflects that the trial court credited John with $58,224.42 as "other assets owned by John at time of marriage plus subsequent gifts made by mother." Sharon claims this should have been only $22,589.14. The record reflects that at marriage John had bonds totaling $29,000 to $30,000, that he brought $21,381 in other property into the marriage, and that at least $17,575 of the subsequent gifts of $30,593.12 made by his mother was used to purchase the land. In addition, the court did not give John any credit for his mineral interest, which has generated $49,655 since the marriage, but considered the one-seventh mineral interest valued at $10,000 as marital property for the purpose of valuing the marital estate, even though it directly resulted from the mineral trust created for John by his mother. We will not disturb the finding of the trial court.

The trial court in its findings and decree did not award alimony to Sharon and she has thereupon assigned error.

In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion under Neb. Rev. Stat. § 42-365 (Reissue 1978), as well as the former decisions of this court, is one of reasonableness. *Kosnopfl v. Kosnopfl*, 206 Neb. 524, 293 N.W.2d 854 (1980). The statute provides in part: "[T]he court may order payment of such alimony by one party to the other . . . as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party

to engage in gainful employment without interfering with the interests of any minor children in the custody of such party."

Further, in applying the statute, this court has said: "It is the general rule that a judgment of the District Court is supported by a presumption of correctness, and this court is not inclined to disturb the alimony award made by the trial court unless it is patently unfair on the record." *Cole v. Cole*, 208 Neb. 562, 565, 304 N.W.2d 398, 400 (1981); *Buker v. Buker*, 205 Neb. 571, 288 N.W.2d 732 (1980). The record in this case reveals that Sharon has been awarded some $354,712, or 43 percent of the marital estate. In addition, she will currently receive $1,000 a month in child support. During the first year after the dissolution, she will receive $27,000 as a result of the decree. Presumably, she will also have at her disposal the sizable investment income potentially derivable from the $150,000 lump sum cash payment ordered as part of the property division. Upon this record, we cannot say that the refusal to award alimony was patently unfair. The trial court's decision in this regard is affirmed.

Sharon next assigns that the court erred in awarding inadequate child support because the court made no provision for an increase in child support as each of the children reaches his or her age of majority.

This assignment of error is not argued or discussed in appellant's brief. It has long been a rule in this state that errors assigned but not discussed will generally not be considered by this court on appeal. Neb. Ct. R. 8.a.2.(3) (Rev. 1977); *Countryside Mobile Homes of Lincoln, Inc. v. Schade*, 204 Neb. 209, 281 N.W.2d 756 (1979). Should there be a material change in the circumstances requiring a modification of the child support, provision therefor has been made by the Legislature. See Neb. Rev. Stat. § 42-364 (Reissue 1978).

Sharon's final assignment of error relates to the

fee the court allowed her attorneys. The trial of this case lasted approximately 1½ days, and Sharon and John and John's appraiser were the only witnesses. In addition, Sharon offered several exhibits. The court allowed Sharon $3,000 for attorney fees and the cost of her appraiser, who did not testify. There is no rule which requires a trial court to necessarily award attorney fees in accordance with the value of the services in a divorce case. The award of attorney fees is discretionary with the trial court and depends on a variety of factors, including all the circumstances, such as the amount of the division of property and alimony awarded, the earning capacity of the parties, and the general equities of the situation. *Brown v. Brown*, 199 Neb. 394, 259 N.W.2d 24 (1977). We cannot say that the award of attorney fees in this case was either incorrect or an abuse of discretion.

The decree of the District Court is affirmed. Sharon is awarded the sum of $1,000 for the services of her attorney in this court.

AFFIRMED.