DOROTHY SHALD, APPELLANT, V. PATRICK J. SHALD,
APPELLEE.

346 N.W.2d 406

Filed March 30, 1984. No. 83-320.

James A. Lane and R. Kevin O'Donnell of McGinley, Lane, Mueller, O'Donnell & Merritt, P.C., for appellant.

Michael V. Smith of Smith, King & Waite, for appellee.

KRIVOSHA, C.J., CAPORALE, and GRANT, JJ., and CAMP, D.J., and COLWELL, D.J., Retired.

CAMP, D.J.

Dorothy Shald (Dorothy), petitioner-appellant herein, has appealed to this court from a decree en-

tered by the district court for Sheridan County, Nebraska, dissolving the marriage of Dorothy and Patrick J. Shald (Patrick), the respondent-appellee. In its decree entered on April 11, 1983, the trial court found that the marriage between the parties was irretrievably broken, and dissolved the marital relationship. The court found both parties to be suitable custodians for the minor children, and in the best interests of the children awarded the physical custody to Dorothy, with reasonable rights of visitation to Patrick, and ordered Patrick to pay child support of $667.03 per month beginning on May 1, 1983, and continuing on the first day of each month thereafter through October 1, 1985, at which time child support would be in the sum of $467.03 per month until the youngest child of the parties has attained the age of 19 years, dies, marries, or becomes emancipated. Patrick is to provide health and accident insurance on the minor children of equal benefit to the coverage levels in effect on March 3, 1983, and is to pay all reasonable medical expenses incurred by the children or on their behalf through November of 1985. After November 1, 1985, respondent is to have no medical expense obligation except to provide health and accident insurance of equal benefits to the amount of coverage in effect on March 3, 1983. Dorothy was further awarded a cash sum of $6,900, and awarded the sum of $1,000 per month for 121 months as alimony. Dorothy was awarded the family home and specific items of personal property and household items which she desired, and was also awarded a Chevrolet van.

In its decree the court awarded Patrick the Shald's Market—a grocery store—including the real estate, building, inventory, equipment, and accounts receivable; awarded him the insurance policies and all personal property that he requested; and directed that Patrick would assume and pay the Gordon State Bank of Gordon, Nebraska, the balance due on the note owed to it secured by the lien against

the Chevrolet van, and all debts owed the First National Bank of Gordon and the Shald Land and Cattle Company on the grocery store debt. Dorothy was directed to assume and pay the balance due the First National Bank of Gordon for its mortgage on the family home. Finally, Patrick was directed to pay the sum of $3,050 for Dorothy's use in paying her attorney fees.

In her brief on appeal Dorothy makes the following assignments of error: (1) That the court erred in its division of property; (2) That the court erred in the amount of alimony awarded, in that it is wholly inadequate considering the income of Patrick; and (3) That the court erred in the amount of child support in light of the circumstances of the parties.

The factual background of this appeal, as revealed in the record, indicates that the parties have lived in Gordon, Nebraska, since their marriage on July 27, 1968. As a result of the marriage, three children were born: Jason, born February 5, 1971, Temple, born June 17, 1974, and Sharon, born August 17, 1980. Prior to the marriage, Dorothy had attended Chadron State College from 1963 to 1966. She then worked as a telephone operator and as a teacher, and then went back to school in 1968 for a semester. She still needs 43 hours to obtain her B.S. degree. Dorothy attained a teaching certificate immediately after they were married, and taught 2 years at a country school until she was pregnant with their first child. Patrick, at the time of the marriage, had 2 years of college at Chadron. After the marriage Patrick worked for his brother in a grocery store for 5 years, and then worked for his father, selling hides and furs, until he built a grocery store in 1974. Patrick secured the funds to build the grocery store by borrowing from his father, who was the owner of the Shald Land and Cattle Company, and also borrowed money from the First National Bank of Gordon.

Dorothy's first argument on the division of property is the trial court's setting off to Patrick $63,500

as nonmarital property. The record shows that Patrick received from his father stock in the family corporation, the Shald Land and Cattle Company, which Patrick later sold for the sum of $28,500, and which he applied to indebtedness on the family grocery store. There is no evidence in the record to contradict this gift. This gift was set off by the court to Patrick. In addition, Patrick's father sold to Patrick 15 acres of land for $1. The parties sold one parcel for $2,000. A second parcel was sold for $3,000. On the third parcel was located a home into which Patrick and Dorothy moved. The home was eventually sold for $35,000, which went to pay off a note that the parties had at the First National Bank for their present home. The trial court held that the land transaction was a gift to Patrick of $40,000, together with the $28,500 stock sale, deducted $5,000 as Dorothy's share of $10,000 which had been used to remodel the home, and set off a total of $63,500 to Patrick as nonmarital property.

In *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 733, 325 N.W.2d 832, 834 (1982), we provided an exception to the general rule that inherited property acquired by one of the parties is ordinarily set off to the individual receiving the inheritance or gift and is not considered a part of the marital estate, by stating: "An exception to the rule is where both of the spouses have contributed to the improvement or operation of the property which one of the parties owned prior to the marriage or received by way of gift or inheritance, or the spouse not owning the property prior to the marriage or not receiving the inheritance or gift has significantly cared for the property during the marriage. See *Rhodes v. Rhodes*, 210 Neb. 373, 314 N.W.2d 271 (1982)."

While we are ever reluctant to disturb the division of property as ordered by the trial court, an examination of the evidence in this case discloses that the exception to the general rule on setting off gift or inherited property should be applied. Patrick testi-

fied the house was remodeled by putting $10,000 into the home, and by him and Dorothy physically doing all of the work themselves. The parties lived in the home until 1978, when their new home was built. Dorothy testified that it was her recollection that the land was given to both of them by Patrick's father. We have no way of determining from the record that Patrick's father did not intend that the land be a gift to both parties. We believe that the $40,000 received from the sale of the land should not have been set aside to Patrick as nonmarital property. Dorothy should be awarded an additional $15,000 payable to her by Patrick in three equal annual installments.

Dorothy's other argument on the division of property is that the court did not fairly value the business of Shald's Market. Both parties had a qualified expert or experts testify on their behalf as to the value of the property. There was no dispute over the inventory, equipment, or accounts receivable. The dispute comes as to the value of the real estate and the value of Shald's Market as a going concern. Of the three appraisers who testified, each came up with a different value for the property. The court arrived at a figure between the high figure, as presented by the testimony on Dorothy's behalf, and the low figure, as presented by Patrick's witnesses.

While in a divorce action the case is to be tried de novo, this court will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. *Cole v. Cole*, 208 Neb. 562, 304 N.W.2d 398 (1981); *Witcig v. Witcig*, 206 Neb. 307, 292 N.W.2d 788 (1980). We cannot say that the court erred in the value it placed on the real estate and Shald's Market.

Dorothy further argues in her brief that she is entitled to a larger share of the marital estate. The trial court found the gross value of assets of the parties to be $547,699.78. The total liabilities of the parties, both on the business and against the family

home and van, amounted to $208,339.60. The net worth of the parties was established at $339,360.18, from which was deducted the $63,500 to Patrick as nonmarital property. The net value of the property that Dorothy received in the order of the trial court amounts to the sum of $94,989.65. In addition, Patrick is required to pay $1,000 per month to Dorothy for 121 months and to pay child support of $667.03 per month for 2½ years, and $467.03 per month thereafter, and is to maintain health and accident insurance on the minor children of the parties.

We have held that there is no mathematical formula by which property awards can be precisely determined; they are to be determined by the facts in each case. *Matlock v. Matlock*, 205 Neb. 357, 287 N.W.2d 690 (1980). Generally speaking, awards in cases of this kind vary from one-third to one-half the value of the property involved, depending upon the facts and circumstances of the particular case. *Ragains v. Ragains*, 204 Neb. 50, 281 N.W.2d 516 (1979). See, also, *Johnson v. Johnson*, 209 Neb. 317, 307 N.W.2d 783 (1981). This court is not inclined to disturb the division of property made by the trial court unless it is patently unfair on the record. *Ritter v. Ritter*, 205 Neb. 668, 289 N.W.2d 526 (1980).

Dorothy's final assignment is that the court erred in not awarding her sufficient alimony and child support considering the entire circumstances of the parties. Regarding the question of child support, the trial court has reduced the amount of child support of $667.03 per month to $467.03 per month beginning November 1, 1985. The record is bare from which this court can determine a reason for the reduction of child support, unless it is upon a supposition that Dorothy will complete her college education, secure a job as a teacher, and have her own source of income. We believe it is more proper that the child support should remain at the sum of $667.03 per month until the youngest child of the parties attains 19 years of age, dies, marries, or becomes other-

wise emancipated, or until the further order of the court.

Dorothy is additionally arguing for an increased alimony award by pointing out to the court that Patrick's income from the Shald Market has increased dramatically within the last several years. The record reflects that in 1978 the adjusted gross income of the parties was $62,600; in 1979 it was $51,900; in 1980, $48,500; in 1981, $80,100; and in 1982, $145,100. An accountant called on behalf of Patrick explained that the inventory for the grocery store, which was used in completing the balance sheet at the end of 1982, showed an increase of $46,000. He also testified that the accounts receivable in 1982 showed an increase of $10,000. The increased inventory and accounts receivable contributed to the profits that the grocery store realized, and are part of the income on which the parties have to pay federal and state taxes. This is not cash available to pay current expenses. In addition, both Dorothy and Patrick made charges to the store for items purchased, and this was added to the income of the grocery store and counted in the adjusted gross income for 1982 on which taxes are owed. Full liability for 1982 federal tax was $59,979.86, with a credit for $20,000 paid in installments. Their state tax liability was $10,255.49, with a credit of $140 based on food tax credit. The accountant further testified that at the end of 1982 the checking account of the Shald Market was overdrawn and that the only cash on hand was in the cash registers to do the next day's business, in the amount of $4,086.51. Patrick explained that the increase in income, in addition to the inventory and accounts receivable, was due to the fact that his main competitor had business which was going to the Shald Market, and in fact the other market failed and had been reassumed by the former owner. In addition to that failed grocery store, there was one other grocery store in the city. When the former owner of the grocery store reopened in the

fall of 1982, Patrick noticed that his volume had decreased. Other than the grocery store, the parties had no cash or savings in personal accounts.

In determining whether alimony should be awarded, the ultimate test is one of reasonableness. *Baird v. Baird*, 196 Neb. 124, 241 N.W.2d 543 (1976). The total obligation imposed upon the party and that party's ability to make the payments required must be considered in determining whether the award made was erroneous. *Watkins v. Watkins*, 209 Neb. 14, 305 N.W.2d 894 (1981). The ability of Patrick to pay the debts of the business, the debts of the family, the alimony, and the child support is dependent upon the continuing operation of the grocery store.

The fixing of alimony or distribution of property rests in the sound discretion of the district court, and in the absence of an abuse of discretion will not be disturbed on appeal. *Phillips v. Phillips*, 200 Neb. 253, 263 N.W.2d 447 (1978). As we view the record, the determination of the value of the business, the real estate, the award of alimony, and property division, except as modified for child support and property set off as property received by gift, was adequate and reasonable under all the facts and circumstances.

The decree of the district court is affirmed as modified. Dorothy is awarded the sum of $1,000 for the services of her attorney in this court.

AFFIRMED AS MODIFIED.