BETTY K. REUTER, APPELLANT, V. RONALD L. REUTER, APPELLEE.

359 N.W.2d 78

Filed December 7, 1984.   No. 83-549.

Terrance A. Poppe of Hecht, Sweet, Alesio & Morrow, P.C., for appellant.

Hal W. Bauer of Bauer, Galter & Geier, for appellee.

BOSLAUGH, HASTINGS, CAPORALE, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.
This is an appeal from a dissolution of marriage decree filed June 27, 1983, dividing personal property between the parties and making these awards to petitioner: (1) Custody of two minor adopted children; (2) Child support of $100 per month per child; (3) $200 a month alimony for 60 consecutive months; and (4) An equitable interest in a rural residence acreage subject to $50,750 in improvement debts. Petitioner appeals, claiming two errors: (1) That she should not be required to pay all of the joint debts; and (2) That the alimony award was inadequate in view of her ordered debt liability.

Betty K. Reuter, petitioner, and Ronald L. Reuter, respondent, 30 and 35 years of age respectively, were married December 31, 1971. On November 5, 1982, they adopted two minor boys, Scott A. Reuter, born December 26, 1972, and Todd M. Reuter, born April 23, 1974, who had been living with them for 4 years. The boys reside with Betty, who receives $209 a month care and support subsidy for each child from the Lancaster County Welfare Department. Betty is a schoolteacher by education and has taught for 7 years. She last earned $1,289 per month; however, her contract expiring September 1, 1983, was not renewed because of budget cutbacks. At trial she had no other employment. Ronald is a machinist, earning $1,550 per month from Garner Industries, Lincoln, Nebraska; he farms part-time on his parents' farm, using their machinery. In the last 2 years he averaged $5,000

annual farm income. He pays a token rental by paying the real estate taxes and keeping the machinery in repair.

We have held that the division of property and the awarding of attorney fees in marriage dissolution cases are matters initially entrusted to the sound discretion of the trial judge, which matters, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion; however, where the evidence is in conflict, this court will give weight to the fact that the trial judge observed and heard the witnesses and accepted one version of the facts rather than another. *Guggenmos v. Guggenmos, post* p. 746, 359 N.W.2d 87 (1984). We now hold that the same standard of review applies in the awarding of alimony.

Most of the evidence relates to the division of personal property which was generally divided, without objection, between the parties as they suggested and requested, with these approximate values: $12,750 to Betty and $13,800 to Ronald.

The main issue concerns $50,750 in marital debts, which Betty was ordered to pay, that were incurred by the Reuters' improving an old farmhouse 5 miles south of Elmwood, Nebraska, owned by Betty's parents, Mr. and Mrs. Howard Crandell. The Reuters paid no rent. Both parties claimed an equitable interest in the house (later discussed), which Betty petitioned to be assigned to her—Ronald did not object—and the court awarded it to Betty subject to "Petitioner should . . . pay the notes and indebtedness to American Exchange Bank in Elmwood, Nebraska and to Vern Jansky and Howard Crandell."

There is no mathematical formula for dividing property when a marriage is dissolved; such awards are to be determined by the facts in each case, the *ultimate test being one of reasonableness. Guggenmos v. Guggenmos, supra.*

After moving to the farmhouse in 1974, the Reuters improved the house located on a 1.28-acre surveyed tract, with the consent and approbation of the owners. Ronald contributed $1,500 from his insurance, Howard Crandell advanced $5,000 for material, and $11,200 was borrowed from the Elmwood bank, with a $138.86 monthly payment note signed by the Reuters and the Crandells, who also gave some

form of security; this note balance is $3,800. Most of the work was done by Ronald, with some assistance from Mr. Crandell.

In 1982 there was a major house improvement financed by advancements made by the Elmwood bank as needed, represented by a $41,200 note given to the bank by the Reuters in January 1983, requiring $600 monthly payments; there was also an unpaid $1,750 account of Vern Jansky, contractor, for work last performed in August 1982. At the time the $41,200 note was executed, the parties were separated and Ronald did not live in the home.

Betty valued the house at $60,000 to $70,000; Ronald's opinion was $80,000. There was no independent appraisal.

The evidence of the debts is clear; however, the evidence concerning the validity of their claimed equitable interest in the house is confused, sketchy, and speculative. The parties do not agree on the details of an agreement with the Crandells to convey the property to them. Betty's only testimony was that the Crandells orally agreed to convey the property to her when all of the debts were paid. Ronald testified that the agreement was that the Crandells would convey the property to Betty and him when the $11,200 bank loan and Crandell's $5,000 advancement were paid; further, that when the 1982 major improvements were made, the Crandells agreed to convey the property to the Reuters so that they could give the bank a note and mortgage for their bank debts but that when the Reuters separated, the Crandells would not convey the property and the Reuters gave the bank the $41,200 note without any security.

Betty now argues that their claimed equitable interest in the house has no value, since in its present posture some judicial title determination is required, that she cannot pay the monthly payments to the bank, and that Ronald should be required to pay one-half of the debts imposed upon her. As an alternative, she suggested that the equitable interest in the house be assigned to both parties in equal shares subject to the debts, which we reject as unreasonable under this record.

When Betty commenced this action, which included a request for the assignment of the equitable interest to her, all of the controverted facts and circumstances were known to her. The validity and the resource value of the equitable claim that

she now questions were a part of her burden of proof; further, litigants have a responsibility to fully and fairly present to trial courts all material evidence for an intelligible presentation of all issues. Here, the parties were the only witnesses, and the evidence is inconclusive on the equitable interest issue as a marital asset, leaving to speculation the position and claims of the Crandells as titleholders concerning the Reuters' claims. The claims of the bank were also material. The appellant urges this court to bring order out of chaos, even though our review is limited to the record she presents. Under this record the assignment to Betty of the equitable interest in the house and 1.28-acre tract subject to the debts as ordered by the court was reasonable, and it was not an abuse of discretion. However, since the joint liability of both Betty and Ronald for those debts was either fixed or admitted by them, the decree should be modified to provide that Betty shall hold Ronald harmless from liability on the debts owed to the bank on the two notes and on the accounts of Vern Jansky and Howard Crandell.

As to the second claimed error, it was considered with the division of property. At trial Betty requested an alimony award of $12,000, payable $100 per month for 10 years. The court approved that award, payable $200 a month for 60 consecutive months; it meets the test of reasonableness, *Slama v. Slama*, 203 Neb. 644, 280 N.W.2d 633 (1979), and no good cause is shown to disturb the award, *Cumming v. Cumming*, 193 Neb. 601, 228 N.W.2d 296 (1975).

AFFIRMED AS MODIFIED.