HOWARD R. MCCOLLISTER, APPELLEE, V. SHIRLEE RUSHTON
MCCOLLISTER, APPELLANT.

365 N.W.2d 825

Filed April 12, 1985.   No. 84-131.

Knudsen, Berkheimer, Richardson & Endacott, for appellant.

Daniel J. Duffy of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

BOSLAUGH, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Respondent, Shirlee Rushton McCollister, appeals a dissolution of marriage decree, assigning three errors: (1) The unreasonable division of property; (2) The amount and duration of alimony; and (3) The cancellation of a $41,135

nonnegotiable note executed by appellee, Howard R. McCollister, in favor of appellant.

The decree, entered December 30, 1983, included these orders (summarized): Each party was awarded his or her personal effects, jewelry, and the other personal property possessed at the time of marriage. Appellant was awarded (1) the household goods and furniture located in the parties' Omaha condominium ($10,000), (2) her undivided one-half interest in an investment rental house on Parker Street, Omaha, Nebraska, (3) a 1978 Cadillac car, and (4) all certificates of deposit and bank accounts registered in her name. Appellee was awarded (1) the household goods and furniture located in the parties' Colorado condominium, (2) all stocks, bonds, bank accounts, insurance policies, and pension benefits owned and possessed by him, (3) the condominium located at 1030 South 111th Plaza, Omaha, Nebraska, subject to encumbrances to be paid by him, and (4) the condominium located at 3350 Camels Ridge Lane, Colorado Springs, Colorado, subject to encumbrances to be paid by him. Appellee was ordered to pay $4,798 marital debts, pay to appellant as alimony $1,000 per month commencing December 1, 1983, for a period of 36 months or until death or remarriage of appellant or death of appellee, and to pay appellant $2,500 for attorney fees. The disputed $41,135 promissory note, exhibit 11, was ordered canceled.

The parties were married February 14, 1976, at Greeley, Colorado; both had been previously married. Howard, age 58 years, as plant manager of Witco Chemical Corporation, Omaha branch, earned an average annual salary of $60,000; he had been employed by that company and its predecessors for 29 years. Shirlee, age 56 years, was not employed; she had worked for less than 1 year as an apprentice interior decorator at $4 per hour. During the marriage, she had cancer surgery, and her condition requires regular medical attention.

During the 1976 to 1982 taxable years, they reported total taxable income (rounded) of $850,000, including: wages, $411,000; interest, $84,000; dividends, $55,000; capital gains, $280,000; and miscellaneous, $24,000.

The parties jointly owe federal and Nebraska state income

tax deficiencies. Exhibit 26 is a notice from the IRS of their liability for $89,586 tax deficiencies and penalties for 1977 and 1978. Exhibit 12 contains a computation prepared by Howard's tax consultants on September 12, 1983, showing federal and state tax liability and penalties of $105,169, interest of $41,424 for 1977 to 1980, and Howard's payment of $75,000, leaving a balance of $71,593. The trial court ordered Howard to pay the tax liability and to hold Shirlee harmless therefrom.

The court assigned all of Howard's pension rights to him; however, no required finding was made of its value. Neb. Rev. Stat. § 42-366 (Reissue 1984); *Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W.2d 844 (1981). Exhibits 18, 24, and 27 show that after January 1, 1990, his lifetime annual retirement benefit was projected as $23,565; it is vested, with preretirement death benefits. Further, on January 1, 1984, he had an option for early retirement benefits in a life annuity of $1,098 a month or 10-year-certain benefits of $1,045 a month.

At the time of marriage each party owned property, exclusive of tangible personal items, as follows: Howard: residence, $80,000; stocks and bonds, $431,000; and contracts, $12,000; all subject to $54,000 in debts, for a net value of $469,000. Shirlee: residence, $90,000; stocks, $6,000; savings certificate, $6,000; and contracts, $9,000; all subject to a $16,000 house mortgage, for a net value of $95,000. The joint total value was $564,000.

During the marriage, these property changes occurred. Shirlee's residence was sold for $80,000, and she received a $30,000 gift from her father; all of these funds were retained by her. Howard's residence was sold for $120,000; he sold his shares in Southwest Petro-Chem, Inc., for $659,125, netting a $232,000 capital gain; and he inherited an interest in real estate, which was sold for $144,000; all of these funds were either invested in present, identifiable, marital assets or expended for regular family expenses.

Soon after their marriage, they built as their home the Omaha condominium, toward which Howard contributed $75,000 from the sale of his residence; at trial it had a net value of about $97,800. In 1979 they built the Colorado condominium, primarily as an investment; Shirlee contributed

the $5,000 downpayment, which is included in the disputed note. There is strong evidence that Howard contributed most of his $144,000 inheritance, along with other assets and earnings. At trial Howard testified the net value of the Colorado condominium was about $145,264; however, this value included as a liability the disputed $41,135 note, which, when canceled by the court, increased the net value to about $186,400. Shirlee's expert estimated the Colorado condominium's value at $60,000 less. Both condominiums were titled in the names of the parties as joint tenants.

At trial the total marital property, exclusive of tangible personal property, totaled $524,000, which was assigned by the decree as follows (values rounded): To Howard: furniture, $8,000; Omaha condominium, $97,000; Colorado condominium, $186,000; life insurance (value), $21,000; stocks and bonds, $160,000; pension, no value assigned; and cash, $10,000; for a total of $482,000, subject to $100,000 in debts and tax deficiencies, for a net value of $382,000. To Shirlee: furniture, $10,000; rental house, $1,200; and certificates of deposit, $131,000; for a total of $142,000; the disputed note is not included.

From the beginning, with no objection by Howard, Shirlee kept and segregated all of her original assets as her separate property, including gifts and the proceeds from the sale of her residence. Her property was generally invested and reinvested in certificates of deposit. There is no evidence that any other funds were included.

During the marriage, Howard commingled all property and earnings as needs arose. With minor exceptions he voluntarily paid and invested in all of the parties' household fixed charges and expenses, taxes, home maintenance, insurance premiums, health care, entertainment, interest, mortgage payments, tax penalties, and condominium purchases and construction costs.

The record does not provide a clear explanation of the dramatic change in the value of the marital assets, except the parties' unrestrained spending.

The standard of review of the division of property and the award of alimony in marriage dissolution cases is that these matters are initially entrusted to the sound discretion of the trial

judge, which matters, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion; however, where the evidence is in conflict, this court will give weight to the fact that the trial judge observed and heard the witnesses and accepted one version of the facts rather than another. See, *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984); *Reuter v. Reuter*, 218 Neb. 732, 359 N.W.2d 78 (1984).

The first and third assigned errors are discussed together.

In an action for dissolution of marriage, the rules for determining the division of property owned by the parties, including that owned at marriage and acquired by gift or inheritance, provide no mathematical formula by which such awards can be precisely determined. Such awards are to be determined by the facts in each case. See *Lord v. Lord*, 213 Neb. 557, 330 N.W.2d 492 (1983). "The ultimate test . . . is one of reasonableness." *Burger v. Burger*, 215 Neb. 699, 701, 340 N.W.2d 400, 401 (1983).

It is not necessary to set out the note in full. It was dated October 19, 1981, and signed by Howard, promising to pay Shirlee for future money advances made by her for mortgage payments and other expenses related to the Colorado condominium, all with interest. Howard endorsed on the note his receipt of seven such advances between December 30, 1981, and September 1, 1982, totaling $41,135.59.

At the time the court announced the decree, the record shows:

MR. LUSTGARTEN: You have no provision in here for the repayment by Mr. McCollister to Mrs. McCollister.

THE COURT: No. As a matter of fact, if it's necessary, I do specifically find that the note should be canceled.

MR. LUSTGARTEN: And she gets no return of the monies?

THE COURT: That's right, *other than alimony award*. I don't think that agreement is any more valid than the antenuptial agreement.

(Emphasis supplied.)

Shirlee argues that the note is a debt that Howard owes, and she should recover it in the property division.

Neb. Rev. Stat. § 42-201 (Reissue 1984) relates to a wife's separate property, generally providing that the property owned by the wife at the time of marriage, together with profits, increases, purchases, and gifts, remains her sole property. In *May v. May*, 9 Neb. 16, 2 N.W. 221 (1879), a wife was allowed to recover from her husband on a promissory note. See, also, *Imig v. March*, 203 Neb. 537, 279 N.W.2d 382 (1979). However, in *May* the recovery on the note was the issue pleaded and proved. The dissolution proceedings here are equitable in nature; Shirlee does not plead an issue to recover money from Howard on the note. Rather, the only consideration of the note as an issue is included along with that of all the parties' property in the issues joined in the pleadings for a reasonable division of property and award of alimony. The evidence concerning the note was proof of money advanced to Howard and his intent, at the time, to repay.

"In an action for dissolution of marriage, a court may divide property between the parties in accordance with the equities of the situation *irrespective of how legal title is held*." (Emphasis supplied.) *Cozette v. Cozette*, 196 Neb. 780, 784, 246 N.W.2d 473, 475 (1976). It was not error for the court to consider the money advancements shown in the note and to order its cancellation, since that was a part of the court's discretion in dividing the property, although the reason assigned may have been incorrect. The question is, What consideration was given to the note advancements? The record is not clear; however, we conclude that the trial judge considered the same in the alimony award, and we will do the same.

The absence of any finding of value for Howard's pension rights presents speculative factors that are better treated in this case in the later consideration of alimony.

Shirlee's beginning assets were valued at $95,000; later, the value of the property assigned to her was $142,000, an increase of $47,000. Howard's beginning assets were valued at $469,000; the value of the property assigned to him, not including pension, was $382,000; whether there was a final gain or loss is speculative.

Considering the whole record, the division of property as made by the court was reasonable, and there was no abuse of

discretion therein.

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party . . . .

Neb. Rev. Stat. § 42-365 (Reissue 1984). "In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion . . . is one of reasonableness." *Johnson v. Johnson*, 209 Neb. 317, 325, 307 N.W.2d 783, 789 (1981); § 42-365.

The second assigned error argues that the alimony award of $1,000 a month for 36 months was inadequate. From all the evidence these particular considerations are present. The parties were married 7 years. Shirlee's $41,135 note representing cash advancements was canceled and disregarded in the division of property; further, it was given inadequate consideration in the allowance of alimony. From the record no consideration was given to the value of Howard's pension rights when alimony was awarded, although his annual benefit was substantial. Shirlee was 56 years of age and without occupational skills; her health required regular medical attention, resulting from cancer surgery. The purpose of alimony is to provide for the continued maintenance or support of Shirlee when economic conditions and other circumstances make it appropriate. § 42-365. Shirlee testified that her maintenance and support needs exceeded $3,000 a month.

Shirlee's investment income comes from the interest on $131,000 in bank certificates of deposit; she has no debts. Howard's income exceeds $70,000 annually, and he has substantial vested pension rights. There was a dramatic reduction of marital asset values during the marriage, considering the gross incomes, capital gains, inheritances, and stable economic conditions. Both condominiums are potential income-producing assets, either as rentals or from their sale proceeds. There are, however, substantial monthly condominium expenses chargeable to Howard for expenses, mortgage payments, taxes, and insurance. Howard was

ordered to pay $4,798 marital debts, and he was ordered to pay and hold Shirlee harmless for both mortgage indebtedness and the income tax deficiencies of $71,593 and interest.

From the whole record we conclude that the alimony award was unreasonable, amounting to an abuse of discretion. It should be modified to provide that appellee shall pay to appellant as alimony the sum of $1,000 each month beginning December 1, 1983, for a period of 36 consecutive months, and thereafter to likewise pay $750 each month for 36 consecutive months. All such alimony payments are to terminate upon either the death or remarriage of Shirlee or the death of Howard. Appellant is allowed $1,000 as attorney fees in this court.

AFFIRMED AS MODIFIED.