IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CLASON V. CLASON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RACHELLE A. CLASON, APPELLEE,

V.

STEVEN E. CLASON, APPELLANT.

Filed October 25, 2016.    No. A-15-626.

Appeal from the District Court for Furnas County: DAVID URBOM, Judge. Affirmed in part, and in part reversed and remanded with directions.

Siegfried H. Brauer, of Brauer Law Office, for appellant.

Jaclyn N. Daake, of Duncan, Walker, Schenker & Daake, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Steven A. Clason appeals from a decree of dissolution entered by the district court, which dissolved his marriage to Rachelle A. Clason, divided the marital assets and debts, and ordered Steven to pay Rachelle an equalization payment in the amount of $150,000. Subsequent to the trial, Steven filed a motion for a new trial, which was denied by the district court. Steven now appeals, and for the reasons that follow, we affirm in part, and in part reverse and remand with directions.

Upon our review of the record, we find that the district court erred in failing to classify the 2013 and partial 2014 real estate taxes as a marital debt. We also find plain error in the trial court's calculation of the amount of Steven's premarital debt that was paid using marital funds. As a result

- 1 -

of these errors, we remand the matter to the district court to recalculate the marital estate and redistribute the assets and debts between the parties.

## II. BACKGROUND

Steven and Rachelle were married on May 29, 2006. No children were born of the marriage; however, Rachelle had two minor children from a prior marriage.

On May 23, 2014, Rachelle filed a petition for dissolution of marriage. Almost immediately thereafter, she used marital funds to purchase a single family home in Beaver City, Nebraska for her and one of her sons. In the petition, Rachelle specifically asked that the parties' marriage be dissolved, that their marital assets and debts be equitably divided, that her maiden surname be restored, and that she be awarded alimony and attorney fees.

On July 23, 2014, Steven filed an answer. In his answer, he denied that the marriage could not be salvaged and asked that the court refuse to dissolve the parties' marriage.

Trial was held on March 4, 2015. The parties' trial testimony centered on whether their marriage was irretrievably broken as well as the value of the marital estate. In particular, much of the testimony focused on the classification of various assets and debts as well as the amount of premarital debts that had been satisfied with marital funds. At the close of trial, both parties agreed to submit written closing arguments.

At trial, Rachelle testified that she believed her marriage to Steven was broken beyond repair. She stated that there had been multiple incidents involving Steven's family that had negatively impacted the marriage, including receiving harassing phone messages and being physically assaulted by his brother. Rachelle also testified to an altercation between her oldest son and Steven, which led to her son moving out of state to live with his biological father. Along with these incidents, Rachelle stated that she did not feel like Steven put their family first before his own family, despite having spoken with him about her concerns.

Apart from familial disputes, Rachelle testified that she and Steven would often get into disagreements and that such disagreements were having a negative effect on her health. She stated that approximately one month prior to filing the petition for dissolution, Steven abused her trust when he used her bid number at an auction to purchase more than $80,000 worth of items without her knowledge or consent.

Rachelle testified that prior to moving out, she had tried to communicate more effectively with Steven to resolve their problems and that they discussed counseling, although they never attended. She finally decided to move out in May 2014 because she felt that the marital home was an unhealthy place for her and her youngest son to live. Upon moving out, Rachelle said that she received multiple bothersome emails and letters from Steven about her decision to leave him.

Steven admitted that there was room for improvement in his marriage to Rachelle and that he had sought advice from his pastor on a monthly basis several years prior to the time of separation. He emphasized that since filing for dissolution, Rachelle had initiated contact with him on several occasions and such contact had not been contentious. Steven testified that he had previously asked Rachelle if she would consider counseling and her response was to the effect of, "not at this time." He stated that he believed their marriage was not irretrievably broken and that Rachelle had not taken reasonable efforts to preserve their union.

The parties also testified regarding various assets that Steven owned prior the marriage. Both parties agreed that all of the farm land, including the land upon which the marital home was located, was premarital land belonging to Steven. Steven testified about various premarital assets, including household items and farm machinery, which he claimed were disposed of during the marriage and never replaced.

Both parties testified that, approximately 10 months into the marriage, Steven filed for bankruptcy. Rachelle stated that they did not jointly file for bankruptcy because all of the debts were related to running the farm and she did not think it would be fair to file jointly since those debts had accrued prior to their marriage. Steven's premarital debts included in the bankruptcy filing consisted of land debt, a lien on cows, liens on farm machinery, prior real estate taxes, and a lien on Steven's 2004 pickup. The bankruptcy filing also included approximately $20,000 of credit card debt, although Steven and Rachelle presented conflicting testimony regarding whether this debt was premarital. Rachelle testified that all of these debts except the land debt and the machinery debt were eventually paid off using marital funds. According to the evidence, the land debt was reduced by $49,000 and the farm machinery debt was reduced by $69,875.

The trial court heard testimony regarding various debts that Steven claimed should be classified as marital. He testified that the second half of the 2013 real estate taxes and the prorated 2014 real estate taxes for the parties' property should be considered marital debts since the expenses arose during the time that Rachelle was still living with Steven and benefiting from the income produced on the land.

Steven next claimed that a $35,000 debt for "unpaid bills" should be classified as a marital liability on the basis that it was for expenses that arose during the marriage. However, when asked specifically what those unpaid bills were, Steven was unable to elaborate beyond the description previously provided in the joint property statement that the debt was for feed, utilities, and attorney's fees. Steven reported that the farm was involved in two lawsuits--a suit initiated by the Department of Environmental Quality (DEQ) and another regarding the Clason Living Trust. He testified that Rachelle was not a party to either suit nor had she been involved in the litigation. Rachelle stated that she was not aware of the DEQ lawsuit and believed that the matter had already been resolved. Steven further claimed that the attorney's fees for those two lawsuits were separate and apart from the attorney's fees included in the $35,000 figure.

The parties also testified regarding whether Steven had already purchased and planted any crops at the time that Rachelle moved out. Rachelle stated that she left around planting season and she believed that Steven had either been in the process of planting crops or that he had already finished. Steven testified that he had not planted any row crops at that time nor did he believe that he had any alfalfa in the ground yet. However, he later admitted that while he may not have had anything planted in the ground before Rachelle left, he had already purchased seed and paid for some of the crop chemical application.

In its decree, the trial court determined that a 2003 Kia Sedona was Rachelle's premarital property, and thus, belonged solely to her. It determined that the farm real estate, including the marital home, the majority of the cattle, and much of the farm equipment was Steven's premarital property and belong solely to him. Regarding marital property, the court awarded Rachelle the home she had purchased in Beaver City, Nebraska, her 2010 Dodge Journey, and various items of

personal and household property. The court awarded Steven the farm equipment and machinery, and the majority of household items.

The trial court determined that the credit card debt paid off under Steven's bankruptcy filing should be considered Steven's premarital debt. The crop seed expense at the time that Rachelle moved out was classified as a marital asset and assigned to Steven. The 2013 and 2014 real estate taxes were classified as nonmarital debt as a lien on premarital property. The trial court disregarded the claimed $35,000 debt for "unpaid bills."

After assigning the assets and debts, the trial court ordered Steven to make an equalization payment to Rachelle in the amount of $150,000. The court determined this amount by subtracting each party's assigned debts from his or her assets and then finding the difference between the two net totals. The court found that Rachelle had a net total of $87,850 and Steven had a net total of $397,497. The trial court then took roughly half the difference between the net totals and ordered an equalization payment in that amount. The decree did not award any alimony or attorney's fees.

Steven now appeals from the decree of dissolution.

## III. ASSIGNMENTS OF ERROR

On appeal, Steven asserts, restated, that the trial court erred in (1) finding evidence sufficient to determine that the marriage was irretrievably broken; (2) its calculations regarding marital property and in imposing an equalization judgment on Steven in the amount of $150,000 in favor of Rachelle; and (3) failing to order a new trial on Steven's motion.

## IV. STANDARD OF REVIEW

An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Longo v. Longo*, 266 Neb. 171 (2003). This standard of review applies to the trial court's determinations regarding the division of property, alimony, and attorney fees. *Id*. An abuse of discretion occurs when the trial court's reasoning or ruling is based upon reasons that are untenable or unreasonable, and as a result a litigant is deprived of a substantial right and denied just results in the matter. *Coufal v. Coufal*, 291 Neb. 348 (2015).

## V. ANALYSIS

### 1. MARRIAGE IRRETRIEVABLY BROKEN

Steven asserts that the trial court erred in finding sufficient evidence to determine that his marriage to Rachelle was irretrievably broken. Specifically, he claims that Rachelle has not demonstrated sufficient effort to preserve their marriage and that she should be required to do so before the court finds the marriage to be beyond repair.

Pursuant to Neb. Rev. Stat. § 42-361(2) (Cum. Supp. 2012), if one of the parties has denied under oath or affirmation that the marriage is irretrievably broken, the court shall consider all relevant factors, including the circumstances that gave rise to the filing of the complaint and the prospect of reconciliation, and shall make a finding whether the marriage is irretrievably broken. The Nebraska Supreme Court has held that when the relationship of two married parties has deteriorated to the point that they can no longer reside with one another, the marriage is irretrievably broken. *Witcig v. Witcig*, 206 Neb. 307, 292 N.W.2d 788 (1980). In reviewing the

sufficiency of the evidence, an appellate court may give weight to the trial court's observations of the witnesses and their manner of testifying as well as the trial court's acceptance of one version of facts over another. *Id*.

In this case, Steven and Rachelle presented conflicting evidence regarding whether their marriage was irretrievably broken. Steven claimed that Rachelle had demonstrated little to no effort to resolve their marital problems and that there was not sufficient evidence to find that their marriage could not be salvaged. Conversely, Rachelle testified to ongoing problems in their marriage, such as conflicts between Steven and her oldest son as well as conflicts with Steven's family, including physical altercations. She also testified to Steven's abuse of her trust and his refusal to address her concerns that he did not put their family first. Rachelle stated that she had made efforts to preserve their marriage, including communicating more with Steven and discussing counseling. Despite this, Rachelle continued to feel that the marriage was unhealthy and moved out of the marital home in May 2014. Almost immediately, she purchased a home of her own and filed for divorce.

Regardless of how Steven viewed the marriage, Rachelle's actions and testimony made it clear that she did not believe their marriage could be salvaged and she had no intention of reconciling with him. When reviewing conflicting evidence, this court will give weight to the factual determinations made by the trial court. Based upon the record before us, we find no abuse of discretion in the trial court's determination that the marriage was irretrievably broken. Therefore, there is no merit in this assignment of error.

## 2. CALCULATIONS OF MARITAL ESTATE

Steven next asserts that the trial court abused its discretion in its calculations regarding the marital estate. Specifically, he argues that the court erred in disregarding a marital debt of $35,000, assigning $20,000 of premarital credit card debt against him, not classifying the 2013 and partial 2014 real estate taxes as a marital debt, failing to credit him for substantial premarital assets, and in classifying his 2014 crop seed expense as a marital asset. Upon our de novo review of the record, we find that the trial court erred in classifying the real estate taxes as a nonmarital debt. We also find plain error in the trial court's calculations regarding the amount of Steven's premarital debt paid with marital funds. Accordingly, we affirm in part, and in part reverse and remand with directions.

Before we address Steven's specific assertions in regard to the calculation of the marital estate, we briefly review the controlling legal principles. Pursuant to Neb. Rev. Stat. § 42-365 (Reissue 2008), the "purpose of a property division is to distribute the marital assets equitably between the parties." *Sellers v. Sellers*, 294 Neb. 346, 882 N.W.2d 705, (2016). However, the marital estate is not divided by a rigid mathematical formula. *McCollister v. McCollister*, 219 Neb. 711, 365 N.W.2d 825 (1985). "The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case." *Sellers v. Sellers, supra*. It is well established that the equitable division of property is a three-step process. First, the court classifies the parties' property as marital or nonmarital, setting aside any nonmarital property to the party who brought that property to the marriage. Next, the court values the marital assets and marital liabilities of the parties. Lastly, the court calculates and divides the net marital estate between the parties in accordance with the principles contained in § 42-365. *Id*. In general,

all property accumulated and acquired by either spouse during marriage is considered part of the marital estate. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). The exceptions to this rule are when a spouse acquires property by gift or inheritance. *Id*. Where one party to a dissolution claims a particular piece of property to be nonmarital, the burden of proof lies with that party. *Id*.

### (a) $35,000 Debt

Steven claims that the trial court should have included a debt for unpaid bills in the amount of $35,000 as a marital debt. In the joint property statement, he cites the cost of feed, utilities, and attorney's fees as the sources of this debt. Steven argues that these expenses arose as part of normal living and operating expenses and as such, should be classified as marital.

Yet, on cross-examination, Steven was unable to give any further explanation for exactly which bills have not been paid and how much was still owing on each. He admitted that any bills for legal work done on behalf of Rachelle had been paid long before and that she was not a party to either the DEQ or Clason Living Trust lawsuits. Furthermore, Steven includes attorney's fees for each lawsuit as separate items listed in the property statement. He testified at trial that those are just projected amounts in order to settle those lawsuits, but we are not convinced that those attorney's fees are distinct from what Steven claims to be part of the $35,000. Rachelle testified that as of the time of separation, she was not aware of any unpaid bills nor was she aware of the DEQ lawsuit. Beyond Steven's assertions that this $35,000 marital debt exists, we find nothing in the record to support the existence of these unpaid bills nor the amount of debt claimed. As a result, we find the trial court did not abuse its discretion in disregarding this as a marital debt.

### (b) Premarital Credit Card Debt

Steven argues that since neither party included his premarital credit card debt on their joint property statement, the trial court erred in assigning such debt to him. He claims that the court should not have included that debt against either party.

However, testimony elicited at trial by both Steven and Rachelle indicates that Steven did in fact have premarital credit card debt. By his own admission, he was operating off of credit cards in 2006 out of necessity in order to keep his farming and cattle operations running. Steven admitted that after filing for bankruptcy, approximately $20,000 of credit card debt was paid off using marital funds. The trial court found this testimony to be credible and issued its order assigning this debt against Steven. We will give weight to the trial court's finding of fact in this regard. We therefore find there was no abuse of discretion in its determination that Steven did have $20,000 of premarital credit card debt that was paid off using marital funds.

### (c) Real Estate Taxes

Steven assigns that the trial court erred in classifying the 2013 and prorated 2014 real estate taxes as a nonmarital debt. He argues that such expenses followed naturally from his farming operation, which produced income benefiting both him and Rachelle. As such, he claims the debt should be classified as marital and equitably divided between the parties. We agree.

In *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000), the Nebraska Supreme Court held that "[i]ncome tax liability incurred during the marriage is one of the accepted costs of producing marital income, and thus, we hold that income tax liability should generally be treated

as a marital debt." The Court ruled that income taxes incurred during marriage are an accepted, and in fact necessary, expense in the production of income. *Id.* Any income generated from employment during marriage is generally considered a marital asset. *Brozek v. Brozek, supra*. We likewise find that real estate taxes assessed on farmland used for income production during the marriage are analogous to income taxes. Such taxes are a necessary expense for the ownership and use of that land in order to produce marital income, and that income benefits both spouses.

Here, the trial court classified the real estate taxes for 2013 and the first five months of 2014 as Steven's nonmarital debt on the basis that the real estate itself was a premarital asset, which was subsequently awarded to him as such. However, Steven and Rachelle were married and living together for the entirety of that time period. Both parties testified to working on the farm and they both benefited from the income generated from the ownership and use of the land. While we recognize that the taxes arose from premarital land, the taxes themselves arose during the course of the marriage as a result of Steven and Rachelle's ownership and use of the land to produce income. To assign such liability to Steven alone, when Rachelle enjoyed the benefits of the income produced on that land, would be patently unjust. We find that the trial court abused its discretion in failing to equitably divide the 2013 and the prorated 2014 real estate taxes between the parties. Accordingly, we reverse, and remand to the trial court to equitably divide and assign the real estate tax liabilities.

(d) Appellant's Premarital Assets

Steven alleges that the trial court erred in not crediting him for substantial premarital assets that were subsequently sold, consumed, or disposed of during the marriage. Specifically, he points to a number of household items such as living room furniture, computer and printer, washer and dryer, refrigerator, TV and stereo, and a bedroom set. He also includes various pieces of equipment, the livestock and feed he owned at the time of the marriage, and the crops that were growing at that time.

Steven testified that many of the household items were outdated and no longer usable; therefore, they were disposed of. In order to receive credit for premarital property, the spouse claiming the credit must be able to trace its value. See *Brozek v. Brozek, supra*. By Steven's own admission, the household items no longer had value at the time at which they were disposed. As a result, he was not entitled to any credit for them.

As to the equipment, Steven testified that he sold most of it for a nominal value, but he did not trace where those proceeds went. As stated in *Brozek v. Brozek, supra*, to trace the value of an item of premarital machinery that has been traded in during marriage, we would need evidence of the ratio of marital-to-nonmarital funds the spouse used to acquire the new asset. We do not have any such evidence in this case. The cattle have also been sold, but again, Steven did not trace where those proceeds went. He testified that the growing crops would have gone into additional cattle or been sold, but again, there was no testimony tracing those proceeds.

As the spouse claiming credit for nonmarital property that was disposed of during the marriage, Steven had the burden of tracing the proceeds and he failed to meet his burden. The trial court did not abuse its discretion in failing to credit him for this premarital property.

### (e) Crop Seed Expense

The trial court classified the $25,000 crop seed expense as a marital asset and assigned it to Steven. He now claims that the crop seed should have been classified as a nonmarital asset on the basis that it was purchased after the time of separation. Steven testified that as of the date that Rachelle left, he had not yet planted anything that year. However, he admitted that he had already purchased seed and had paid for some of the crop chemical application. The trial court included this expense as a marital asset because even though Steven may not have planted any crops before he and Rachelle separated, he had already purchased the seed, which would have used marital funds. Steven has the burden to show that these expenses were not paid for with marital funds, and we do not find sufficient evidence in the record to meet this burden. We therefore find no abuse of discretion in the determination that the crop seed expense was a marital asset and could properly be assigned to Steven.

### (f) Plain Error

Additionally, we find that there is another error concerning the trial court's calculation and division of the marital estate. The trial court calculated Steven's premarital debts that were paid using marital funds and included that amount in its calculation of total marital property assigned to him. It then subtracted the amount of marital debt assigned to Steven from his total marital property to determine his net total share of the marital estate. The trial court then used the difference between Steven's net total share and Rachelle's net total share to determine the amount of the equalization payment awarded to Rachelle.

However, in calculating the decrease in premarital debt assigned to Steven, the trial court appears to have incorrectly added the values. The trial court lists each of Steven's premarital debts that had been paid with marital funds: $229,000 real property mortgage debt, of which $49,000 had been paid during the marriage; $100,000 lien on cows which according to Rachelle had been completely paid during the marriage; $120,000 liens on farm machinery, of which $69,875 had been paid during the marriage; $13,047 real estate taxes; $20,500 debt on 2004 pickup; and $20,000 credit card debt. Adding these amounts together, the trial court found that $182,422 of Steven's premarital debts had been paid using marital funds. That number appears to be in error. We find the sum of these debts to be $272,422. We cannot find evidence in the record to support the trial court's figure.

This error affects Steven's net total share of the marital estate, which in turn affects the amount of the equalization payment awarded to Rachelle. Steven makes no specific assignment of error regarding the trial court's calculations of the decrease in his premarital debt and Rachelle does not challenge the calculations by cross-appeal. Nonetheless, the calculations are clearly wrong and we find that such is plain error. Thus, upon remand, the trial court should recalculate the marital estate and the equalization payment, if any.

### 3. DENIAL OF MOTION FOR NEW TRIAL

Steven assigns that the trial court erred in denying his motion for a new trial. However, he does not state the grounds upon which he claims this was in error. His brief contains no argument whatsoever pertaining to this assignment of error. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error in order to be

considered by an appellate court. *Olson v. Olson*, 13 Neb. App. 365, 693 N.W.2d 572 (2005). We therefore do not address this assigned error.

## VI. CONCLUSION

Upon our de novo review of the record, we find that the trial court erred in calculating the marital estate, specifically in classifying the real estate taxes as a nonmarital debt. We also find the trial court committed plain error in miscalculating the amount of Steven's premarital debts that were paid using marital funds. As a result of these errors, we remand the matter to the trial court to recalculate the marital assets and debts, redistribute them between the parties, and recalculate the equalization payment, if any. We affirm the remainder of the trial court's decision.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.