KATHRYN E. MEINTS, APPELLEE, V.
DONALD F. MEINTS, APPELLANT.

608 N.W.2d 564

Filed March 17, 2000.    No. S-98-278.

Lynne R. Fritz, of Butler, Galter & O'Brien Law Firm, for appellant.

William J. Panec for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, · McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Donald F. Meints (husband) appeals from the dissolution decree rendered by the district court, which dissolved his marriage with Kathryn E. Meints (wife). The husband contends that the district court abused its discretion in dividing the marital estate, arguing that the distribution was not fair and equitable. The primary issue on appeal is whether an income tax liability incurred by one of the parties, when both parties filed separate tax returns during the marriage, should be treated as a marital debt. The district court did not treat the tax liability incurred by the husband as a marital debt and proceeded to divide the remaining marital estate accordingly. Because we hold that income tax liabilities incurred during the marriage are one of the costs of producing marital income, and thus should be treated as

a marital debt, we reverse in part the judgment of the district court and remand the cause with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

The Meintses were married on May 13, 1972. The evidence relevant to this appeal reveals that at the time of trial, the wife had been employed by the State of Nebraska for over 10 years, working at the Beatrice State Developmental Center, where she earned an estimated gross monthly income of $1,427.79. Over her 10 years of employment, she had accumulated $27,208.94 of retirement benefits in the Nebraska Public Employees Retirement System. The husband worked at Stan's Electronics, earning approximately $1,760 per month and had no retirement savings. The husband supplemented his income by painting and had earned between $400 and $2,000 annually for the 3 years prior to trial.

During their marriage, the couple purchased a home in 1973 for $12,500, as joint tenants. The home was valued at $23,675 and had an outstanding mortgage of approximately $1,475 at the time of the trial.

The husband testified that he was self-employed in 1990 and that from 1991 through May 1995, he worked for Tieman Construction. Between 1990 and 1996, the husband incurred a federal income tax liability of $19,162.31, plus an additional $11,235.36 in statutory penalties for late filing, for a total Internal Revenue Service (IRS) liability amounting to $30,397.67. During those years, the husband and the wife filed separate income tax returns. The husband testified that he spent the funds that he failed to withhold from his income for IRS tax purposes on family expenses, and the wife did not dispute this claim. As a result of the IRS liability, the husband's wages were garnished in the amount of $650 a month. The wife also incurred debt during the marriage, and in 1997, she filed a chapter 7 bankruptcy, which discharged some of her debts.

The district court entered a decree of dissolution on February 4, 1998, which was later modified by a nunc pro tunc order dated February 27. As modified, the decree awarded the wife custody of the minor child of the parties and divided the marital estate as follows:

| Assets | Wife | Husband |
|---|---|---|
| Real estate | $20,000.00 | |
| Marital property | 753.00 | |
| Wife's retirement benefits | 27,208.94 | |
| Other marital property | | $ 4,650.00 |
| Total value of assets awarded | $47,961.94 | $ 4,650.00 |
| | | |
| **Liabilities** | | |
| GMAC debt | 3,578.00 | |
| Bank of America debt | 1,475.00 | |
| Attorney fees (bankruptcy) | 350.00 | |
| IRS past taxes (wife) | 120.00 | |
| IRS liability (husband) | | 30,398.00 |
| Spady-Runcie debt | | 1,600.00 |
| MBNA credit card debt | | 3,000.00 |
| Total liabilities | $ 5,523.00 | $34,998.00 |
| | | |
| Net value of property received | $42,438.94 | ($30,348.00) |

The district court calculated the marital estate by subtracting the husband's total of $30,348 from the wife's total of $42,438.94 and rounded the $12,090.94 result to $12,091. The court determined that the husband was entitled to one-half thereof, or $6,046, and entered a Qualified Domestic Relations Order (QDRO). Pursuant to the QDRO, the wife was required to pay $6,046 of her retirement benefits to the husband. Thus, the final disposition of the marital estate was as follows:

| Wife | | Husband | |
|---|---|---|---|
| House | $20,000.00 | Personal property | $ 4,650.00 |
| Personal property | 753.00 | QDRO, retirement | |
| Retirement benefits | 21,162.94 | benefits | 6,046.00 |
| Total | $41,915.94 | | $10,696.00 |

The wife received $41,915.94 in assets and was responsible for $5,523 of debt, whereas the husband received $10,696 in assets and was responsible for $34,998 of debt. Neither party was awarded alimony.

The husband filed a motion for new trial on February 13, 1998. At the hearing on the motion for new trial, the husband's counsel questioned the court's division of the property and

debts. The court explained its rationale in dividing the marital estate as follows:

You have to start with the basic proposition that if you add up all of the assets of both parties and you subtract all of the debts of both parties, you have a marital estate of something over $12,000. Now, that's your starting point. Now, the main question now comes, "How should assets and debts be allocated?"

Now, it is suggested here that if Mr. Meints is going to have to pay all of that IRS debt, that he ought get a big share of the petitioner's QDRO, namely, almost twice as much as he suggests she ought to get. That isn't how you make these divisions. Debts are assigned basically to the person who incurred them and who has the responsibility of paying them. Of course, the big item here is the IRS indebtedness that he incurred on his separate return over some six years when he didn't pay any income tax.

Now, the record reflects that during those years each party was filing a separate return. So these are attributable to him and him alone. It is his responsibility and his failure to pay any tax when he knew or should have been [sic] known that he had it owed; that results in this deficiency. I don't see any equitable basis to say that she has to pay any portion of that.

The husband's motion for new trial was overruled, and this appeal followed.

## ASSIGNMENT OF ERROR

The husband alleges, restated, that the district court erred in failing to make a fair and equitable distribution of the marital estate.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Parde v. Parde, ante* p. 101, 602 N.W.2d 657 (1999). In a review de

novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Id.; Hajenga v. Hajenga,* 257 Neb. 841, 601 N.W.2d 528 (1999).

■ A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Parde v. Parde, supra.*

## ANALYSIS

### GENERAL PRINCIPLES

■ The purpose of a property division is to distribute the marital assets equitably between the parties. Neb. Rev. Stat. § 42-365 (Reissue 1998). The ultimate test for determining the appropriateness of the division of property is reasonableness as determined by the facts of each case. *Hajenga v. Hajenga, supra.* The division of property is not subject to a precise mathematical formula, but the general rule is to award a spouse one-third to one-half of the marital estate. *Thiltges v. Thiltges,* 247 Neb. 371, 527 N.W.2d 853 (1995). In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party, the polestar being fairness and reasonableness as determined by the facts of each case. See § 42-365. See, also, *Hajenga v. Hajenga, supra.* Further, the debts of the parties should be considered in making a property division pursuant to a divorce. *Black v. Black,* 221 Neb. 533, 378 N.W.2d 849 (1985). We have consistently spoken of dividing the *net* marital estate. *Id.*

### INCOME TAX LIABILITY

Before we address the division of property in a broader context, it is imperative that we first resolve the narrower issue regarding the allocation of the husband's income tax liability. In the district court, the wife argued that during the marriage, the parties filed separate tax returns, and the wife paid her taxes in

a timely fashion, unlike the husband. The wife further claimed that it would be unfair to require her to pay $15,198.83, or one-half, of the outstanding income tax liability which was the direct result of the husband's failure to timely pay his share of the taxes. The husband claimed that the fact the parties filed separate tax returns during their marriage is irrelevant because the tax liability incurred was a marital debt. The husband further asserted that he spent the funds that he failed to withhold from his income for tax purposes on family expenses. The wife did not dispute this assertion.

The district court's calculation of the net marital estate suggests that it characterized the IRS liability as marital debt, but did not allocate it as such. The husband claims that the district court erred in not allocating the IRS liability between the parties. The husband is only partially correct.

Equitable property division under § 42-365 is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and determine the marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. In the instant case, we are primarily concerned with steps two and three. For purposes of equitable distribution, a determination must be made of the net value of the marital property of the parties. In computing the value of any net asset, the indebtedness owed against that asset is ordinarily deducted from its fair market value. If a court fails to consider liabilities when conducting its valuation, it has not determined the net value of the marital property. See Brett R. Turner, Equitable Distribution of Property § 7.03 (2d ed. 1994 & Supp. 1999). See, also, 24 Am. Jur. 2d *Divorce and Separation* § 574 (1998).

Income tax liability incurred during the marriage is one of the accepted costs of producing marital income, and thus, we hold that income tax liability should generally be treated as a marital debt. See, e.g., *Barner v. Barner*, 716 So. 2d 795 (Fla. App. 1998); *In re Marriage of Charles*, 284 Ill. App. 3d 339, 672 N.E.2d 57, 219 Ill. Dec. 742 (1996); *Downey v. Kamka*, 189 W. Va. 141, 428 S.E.2d 769 (1993). See, also, Turner, *supra.* Even if the taxes are overdue, the principle behind the rule is the

same, and the underlying tax liability would ordinarily be a marital debt. We do note that equity may not demand the same result if credible evidence establishes that the delinquent taxpaying spouse spent significant funds on nonmarital pursuits. Based on the same equitable principle, however, we conclude that an innocent spouse who has filed separate tax returns, and paid his or her taxes in a timely fashion, should not be forced to share in any statutory penalties for the late filings of a dilatory spouse. See *Capasso v. Capasso*, 129 A.D. 2d 267, 517 N.Y.S.2d 952 (1987). See, also, Turner, *supra*.

Applying these principles to the instant case, we determine that the district court erred when it attributed the past-due $19,162.31 IRS liability solely to the husband. The $19,162.31 tax liability should have been treated as a marital debt. On the other hand, the statutory penalty assessed in the amount of $11,235.36, plus the accruing interest, is properly treated as a nonmarital debt, solely attributable to the husband's late filings. We now proceed to our de novo review of the division of property.

## PROPERTY DIVISION

Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. See *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995). We note that in the instant case, the wife received $41,915.54 in total assets and was responsible for $5,523 of debt; by contrast, the husband was awarded $10,696 in total assets and was responsible for $34,998 of debt. Such a property division is untenable, and we therefore find that the district court abused its discretion.

The district court found that the net value of the family home was $20,000, but the record does not support this finding. Rather, the evidence reveals that the value of the home was $23,675, subject to a mortgage of $1,475. The evidence supports the district court's valuations of all other items of personal property and liabilities; thus, the net marital estate would be calculated as follows:

| Assets | Wife | Husband |
|---|---|---|
| Real estate—family home | $23,675.00 | |
| Marital personal property | 753.00 | $ 4,650.00 |
| Wife's retirement benefits | 27,208.94 | |
| Total marital assets | $51,636.94 | $ 4,650.00 |

| Liabilities | Wife | Husband |
|---|---|---|
| GMAC debt | $ 3,578.00 | |
| Bank of America debt | 1,475.00 | |
| Attorney fees (bankruptcy) | 350.00 | |
| IRS past taxes (wife) | 120.00 | |
| IRS liability (husband) | | $19,162.31 |
| Spady-Runcie debt | | 1,600.00 |
| MBNA credit card debt | | 3,000.00 |
| Total marital liabilities | $ 5,523.00 | $23,762.31 |

| | |
|---|---|
| Total marital assets | $56,286.94 |
| Total marital liabilities | (29,285.31) |
| Net marital estate | $27,001.63 |

For clarification, the statutory penalty assessed by the IRS in the amount of $11,235.36, plus accruing interest, has been treated as a nonmarital debt, and the husband is solely responsible for payment of that sum.

Assuming that the marital assets and liabilities remain as divided by the district court, there is a significant disparity in the property distribution that must be addressed. The district court was concerned that in order to equitably distribute the property, the husband would potentially be awarded a large share of the wife's retirement account. The difficulty with this case, as is true with many cases, is that there are two large, nonliquid assets which are not easily divisible and one large debt that must be distributed between the parties.

In determining an equitable distribution, our de novo review focuses on the problematical IRS liability and how the circumstances of the parties have been affected by the husband's failure to file his separate tax returns or pay taxes on a timely basis. There is no question that the parties filed separate tax returns between 1990 and 1996 and that except for 1996, the wife filed her tax returns and paid her taxes in a timely fashion. In 1996,

the wife was unable to pay approximately $120 in taxes and was making payments at the time of the trial. During 1990 through 1996, the family paid bills and budgeted for expenses based on the expendable income of the parties. Even though the husband spent some of the funds that would have gone toward taxes on family expenses, the effect of not paying taxes for nearly 7 years is devastating in determining a meaningful family budget. We conclude that the husband is substantially responsible for creating the circumstances that the parties find themselves in as a result of the IRS liability.

Consequently, we determine that an equitable division of the $27,001.63 net marital estate should result in awarding $18,010 to the wife and $8,991 to the husband. In doing so, we do not change the award of any real or personal property or debts made in the district court as set forth above. It is, however, necessary to recompute the payment from the wife to the husband in order to arrive at the amount we have determined as an equitable property division in the instant case.

Computation of Payment Necessary
for Equitable Distribution

| | |
|---|---|
| Net value of property received by wife ($51,636.94 - 5,523) | $46,113.94 |
| Less, net marital estate awarded to wife | -18,010.00 |
| Total amount owed by wife to husband for equitable distribution | $28,103.94 |

The district court had determined that the wife should pay to the husband $6,046 to equalize the property division and entered a QDRO with respect to the wife's retirement benefits. Because we determine that the wife owes to the husband an additional $22,058 in order to equitably divide the property, we find it necessary to remand this cause to the district court for a determination of the method of payment. While we could modify the QDRO or redistribute the property in our de novo review, we conclude that the district court is in the best position, with input from the parties, to determine the method of payment, given the nature of the two major assets and the limited liquid resources of the wife.

## CONCLUSION

For all of the foregoing reasons, we affirm in part the decree of dissolution but modify the division of property to require the wife to pay to the husband an additional $22,058 in order to equitably distribute the property in this cause. Because we conclude that the district court is in the best position to determine the method of payment from the wife to the husband, we reverse the judgment in part and remand this cause to the district court for the sole purpose of making such a determination. In all respects other than the division of property, the decree of dissolution is affirmed.

AFFIRMED IN PART AS MODIFIED, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.