DIANE L. HEALD, APPELLEE, V. DAVID S. HEALD, APPELLANT.

611 N.W. 2d 598

Filed June 2, 2000. No. S-98-1301.

Charles Jan Headley for appellant.

Mark J. Milone, of Frost, Meyers, Govier & Milone, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

David S. Heald (husband) appeals from the dissolution decree rendered by the Cass County District Court, which dissolved the marriage between Diane L. Heald (wife) and him. The husband contends that the district court erred in its division of the marital estate by including alleged nonmarital property, by awarding the wife the entirety of the husband's profit-sharing plan, and by failing to set off his premarital downpayment toward the family home. The husband further claims that the district court erred in not granting his motion for a new trial to determine the wife's earning capacity. For the reasons that follow, we affirm as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

The Healds were married on August 26, 1983, and their marriage produced one child. The wife filed a petition for dissolution on January 21, 1997.

During the marriage, the wife was employed in various jobs, including U S West until 1992, followed by a 14-month period of unemployment; then at her husband's family business,

Prescott Heald & Son, Inc. (Heald & Son), for approximately 1 year; and also for a temporary employment agency. At Heald & Son, she worked part time as a computer programmer and was paid $8 an hour. She was still registered with the temporary agency at the time of trial, but was not working. Her highest hourly rate with the agency was $8.97. At trial, the wife calculated her gross monthly income at $9 per hour for a 40-hour week.

Throughout the marriage, the husband was employed by the family corporation, Heald & Son. The husband testified that his gross yearly income was approximately $48,000. The husband was the sole director, officer, and president of the corporation. Additionally, the couple owned the Heald & Son building and derived monthly rental income. The wife estimated the monthly rental income at $3,576.17, whereas the husband proffered a $749.23 figure.

The husband was also a Heald & Son shareholder. The manner in which he acquired his share was sharply disputed at trial. The husband claimed the stock was a gift and should be excluded from the marital estate, whereas the wife argued that the stock was marital property.

The husband testified that he and his father negotiated an agreement in which he became the owner of one share of Heald & Son. Two documents detailed the transaction. Exhibit 26 was an attorney letter, dated August 15, 1983, and addressed to both the husband and his parents. In this letter, the attorney advised:

> In my opinion the stock should be purchased by [the husband] and so long as any amount remains due and owing on the Note from the Company to [the husband's father], or on the Purchase Agreement, the stock should be sold to the Company with only one (1) share being sold to [the husband].

The other significant document was the "Stock Purchase Agreement" between the husband and his parents, dated September 1, 1983. In this agreement, the husband and Heald & Son were referred to as "Buyers" and the husband's father was referred to as "Seller." The agreement stated that the Seller desired to sell 1 share of his stock in the corporation to the husband and the remaining 189 shares to Heald & Son and that the

Buyers desired to purchase such shares. The Buyers agreed to pay all notes and loans the corporation owed the Seller. With these notes, together with interest and price, the total purchase price of all the shares was $147,474.21. The agreement also provided that the shares would remain in escrow and that the husband was prohibited from voting his share until all shares were paid in full. The Buyers authorized the Seller to vote all stock held in escrow until full payment was made.

At trial, the husband's mother testified that no payment was made to her or the husband's father for the share of stock that the husband received and that it was a gift to him. She admitted, however, that she was not involved in the legal transaction, but only in the home discussion. The husband also noted that his mother was not "too involved" in the negotiations. The husband's mother further admitted that, to her knowledge, the stock purchase agreement controlled the transaction.

The husband also testified that the stock was a gift. He stated that he did not file a gift tax return because his accountant told him it was not necessary. He explained that exhibit 27, which contained numerous Heald & Son checks written to the husband's father and signed by the husband, were payments made by the corporation for the 189 shares of stock. The husband stated that he did not use personal earnings to purchase the stock which was evinced in exhibit 27. When confronted with the stock purchase agreement on cross-examination, the husband maintained that the stock was gifted or inherited, but admitted that no documents indicated that it was in fact a gift. The wife testified that she believed that she and her husband bought the one share of stock for $150,000 because he told her that that was what had occurred.

Shortly before the couple married, the husband paid a downpayment for the marital home in Ralston, Nebraska. The wife did not know the amount of the downpayment. The mortgage banker's "Good Faith Estimate of Settlement Charges" was received into evidence, which shows that the home's purchase price was $72,880 and the loan amount was $67,500. At trial, the husband testified and the wife conceded that the difference between the purchase price and the loan amount was the downpayment supplied by the husband. The Ralston home was origi-

nally titled in the husband's name, but during the marriage, he conveyed title to the wife and himself as joint tenants. The couple later moved to another home in Plattsmouth.

Both parties accumulated value in various plans and pensions. Notably, the husband's profit-sharing plan was valued at $151,297.20. The wife also incurred substantial credit card debt during the marriage, and the husband would "bonus" himself additional money from the corporation in order to pay off the debt.

Testimony was also adduced involving the wife's purported frustration of the husband's discovery process during the proceedings. The wife testified that there were 5 or 10 boxes, now located at her mother's house, which she did not disclose to her husband. The wife stated that the boxes contained magazines and sewing books and that she did not disclose them to him because they were heavy. The husband testified that approximately 3 years before he left the marital home, the wife started "boxing stuff" and that although the wife eventually allowed him to review some of them, those he reviewed were not the same boxes that he saw her packing. The husband wanted an opportunity to review the contents of those boxes to see if there were items of substantial value that he could claim as a marital asset.

On October 15, 1998, the district court issued its decree dissolving the marriage. In relevant part, the court made findings that the wife had an earning capacity of $9 per hour and that the husband had a gross monthly income of $4,000 from Heald & Son and $1,065 from the rental property. In the property division, the district court acknowledged that the husband had made a $5,380 downpayment on the first marital home, but found that he was not entitled to any type of credit. The court noted that the property was eventually titled in the names of both parties as joint tenants and that when a husband and wife take property as joint tenants, even though one pays all the consideration therefor, a gift is presumed to be made by the spouse furnishing the consideration to the other. The court found that the current marital home had a fair market value of $220,000 and awarded it to the husband, subject to the outstanding mortgage of approximately $97,081.82. The court found that the rental property had a fair market value of $230,000, with mortgages totaling

$163,445.59. The rental property was also awarded to the husband, subject to the mortgages.

The court found that the Heald & Son stock was marital property. In making its finding, the court noted:

> The Court finds that shortly after the parties were married, the [husband] entered into a stock purchase agreement (Exhibit 7) wherein the [husband] purchased one share of stock in Prescott Heald and Son, Inc. The remaining 189 shares of stock were purchased by Prescott Heald and Son, Inc. and became treasury stock. The [husband], as the owner of the one share of stock, is the sole stockholder of the corporation. A letter from the attorney who handled the transaction (Exhibit 26) further evidences the intent of the parties to enter into an agreement involving the purchase of the share of stock. The outstanding balance owed to the sellers pursuant to the stock purchase agreement has been fully paid off during the marriage of the parties. The [husband's] argument that the one share of stock was a gift to him and that the stock should not be considered as marital property is without merit.

The court valued the stock at $297,000 and awarded it to the husband.

The husband was also awarded the $500 boat trailer, bank accounts worth $244.79, all interest in his 401K plan valued at $2,761, and personal property with an approximate value of $3,550. The court awarded the wife the Jeep Cherokee valued at $10,175, bank accounts worth $15.24, and 600 shares of ADMS stock with an approximate value of $9,750. The wife was also awarded her U S West pension plan, which was rolled over into a Perelman-Carley & Associates, Inc., account, and was valued at $29,591.15. The court awarded the wife all interest in the husband's profit-sharing plan, valued at $151,297, and approximately $12,000 in personal property.

The court also awarded each party one-half of the wife's other U S West pension plan. It further noted that the husband had brought his IRA into the marriage, then valued at $4,237; after the marriage, the parties contributed an additional $8,000. The court set off 34.6 percent of the account's value for the husband

as a premarital asset and then stated that the remaining 65.4 percent should be divided equally as marital property.

In dividing the debts, the court obligated the wife to pay a total amount of $28,432.87, whereas the husband was held responsible for a $3,200 note and the mortgages. The court then noted that because the main assets of the marriage were awarded to the husband, the court equalized the division by entering a $150,000 judgment in favor of the wife and against the husband.

Finally, the court awarded the wife $400 in monthly alimony. The parties stipulated to joint legal custody of their child. The wife was found to be the primary residential or possessory parent, and the husband was obligated to pay $758.01 per month in child support.

The husband timely filed a motion for a new trial, which was overruled in relevant part. The husband timely appealed. We removed this case to our docket pursuant to our authority to regulate the dockets of the appellate courts of this state.

## ASSIGNMENTS OF ERROR

The husband alleges, restated, that the district court erred (1) by including his stock in the family corporation in the marital estate, (2) in awarding the wife the entirety of his profit-sharing plan, (3) in failing to set off his contribution of the downpayment toward the family home, and (4) in not granting his motion for a new trial to determine the wife's earning capacity.

## STANDARD OF REVIEW

■ In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000); *Parde v. Parde*, 258 Neb. 101, 602 N.W.2d 657 (1999).

■ In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Parde v. Parde, supra*; *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999). However, where the credible evidence

is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Schwarz v. Platte Valley Exterminating*, 258 Neb. 841, 606 N.W.2d 85 (2000). An abuse of discretion occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Meints v. Meints, supra.*

## ANALYSIS

### STOCK IN HEALD & SON

The parties were married on August 26, 1983, and the stock transaction occurred on September 1. The husband thus acquired his sole share in Heald & Son during the marriage, and the share is presumptively marital property unless an exception to the general rule excludes it from the marital estate. As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998). .

The husband claims the share was a gift, which is normally excluded from the marital estate. With some exceptions, the marital estate does not include property acquired by one of the parties through gift or inheritance. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). See, also, *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997). The burden of proof to show that property is nonmarital remains with the person making the claim. *Parde v. Parde, supra.* Therefore, the husband has the burden of proving that the stock was a gift.

The husband has failed to meet this burden. Although both he and his mother testified that the stock was a gift, the stock purchase agreement, the attorney letter, and the wife's testimony suggest otherwise. Upon our de novo review, where the credible evidence is in conflict on a material issue of fact, we

consider and give weight to the circumstances that the trial judge heard and observed the witnesses and accepted the wife's testimony and the related inferences from the evidence. See *Elstun v. Elstun, supra*. We therefore conclude that the district court did not err in including the Heald & Son stock in the marital estate.

## PROPERTY DIVISION

■ The husband contests the property division in the assigned errors involving the profit-sharing plan and the downpayment on the marital home. In addressing these alleged errors, we note that the purpose of a property division is to distribute the marital assets equitably between the parties. Neb. Rev. Stat. § 42-365 (Reissue 1998). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000).

■ Equitable property division under § 42-365 is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Meints v. Meints, supra*.

The district court, for the most part, followed these three steps in dividing the property. The court set aside as the husband's nonmarital property his 300 shares of the ADMS stock, his premarital contribution to his IRA, and various items of personal premarital property. The court also awarded the wife various items of her personal premarital property. It then valued the marital assets and liabilities.

The final step involved the calculation and division of the net marital estate. The following chart shows how the marital estate was calculated and divided:

| Assets | Wife | Husband |
| --- | --- | --- |
| Real estate—home | | $220,000.00 |
| Real estate—rental | | 230,000.00 |
| Heald & Son stock | | 297,000.00 |
| Marital personal property | $ 22,175.00 | 4,050.00 |

| | Wife | Husband |
|---|---|---|
| Bank accounts | 15.24 | 244.79 |
| ADMS stock | 9,750.00 | |
| Wife's rollover pension | 29,591.15 | |
| Husband's profit sharing | 151,297.00 | |
| Husband's 401K | | 2,761.00 |
| Wife's other U S West pension plan | one-half | one-half |
| Marital portion of IRA | one-half | one-half |
| Total marital assets | $212,828.39 | $754,055.79 |

| Liabilities | Wife | Husband |
|---|---|---|
| Home mortgage | | $ 97,081.82 |
| Mortgages on rental | | 163,445.59 |
| Loans/credit card debt | $ 28,432.87 | |
| Note to Heald & Son | | 3,200.00 |
| Total marital debt | $ 28,432.87 | $263,727.41 |

| | |
|---|---|
| Total marital assets | $966,884.18 |
| Total marital debts | (292,160.28) |
| Net marital estate | $674,723.90 |

Because the above calculation resulted in the wife's receiving a $184,395.52 portion of the net marital estate and the husband's receiving $490,328.38, the district court entered a $150,000 judgment in favor of the wife and against the husband. This judgment resulted in the wife's ultimately garnering $334,395.52 (49.6 percent) and the husband's receiving $340,328.38 (50.4 percent) of the net marital estate.

Through the imposition of the judgment, the district court attempted to equalize the property division. The husband argues, however, that it is inequitable to impose a $150,000 judgment under the circumstances of this case, i.e., the transfer of a three-generation family business to him. Section 42-365 does direct us to consider, among other things, the circumstances of the parties and their history of contributions to the marriage.

As previously discussed, we agree with the district court's determination that the Heald & Son stock was not a gift and, therefore, was properly included in the marital estate. The husband's claim that it is unfair to impose a $150,000 judgment under the circumstances is not persuasive. The evidence reveals that the husband was invited to join his father in working for the

family business, Heald & Son. The husband's father ran the business and inherited it from the husband's grandfather, who started the business in 1916. Heald & Son is a distribution center for specialty industrial products such as pallet rack industrial shelving. Although the husband worked in the business and contributed toward its success, the remaining 189 shares of Heald & Son stock were purchased by the corporation and became treasury stock during the marriage. The outstanding balance on all notes and loans the corporation owed to the husband's father, in the total sum of $147,474.21, was paid during the marriage. The evidence suggests that the long-established business and family name were greatly responsible for the closely held stock's value at the time of the dissolution decree. In short, there was nothing unusual that either party contributed to the business during the marriage that would cause us to invoke extraordinary equitable principles. Therefore, the district court did not abuse its discretion in making a nearly equal division of the net marital estate.

 Generally, the division of property in a dissolution case is based on equitable principles, and its purpose is to divide the marital assets equitably. *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999). In the instant case, the wife received 49.6 percent of the net marital estate, whereas the husband received 50.4 percent. We conclude that this nearly equal distribution was equitable under these circumstances.

We do, however, modify the property division to reflect the husband's downpayment on the family home. Both parties agreed that prior to the marriage, the husband paid a $5,380 downpayment on the first marital home. The district court did not credit the husband this amount, citing *Brown v. Borland*, 230 Neb. 391, 432 N.W.2d 13 (1988), for the proposition that because the parties took as joint tenants, a gift is presumed to be made by the spouse furnishing the consideration to the other. In so doing, however, the district court did not recognize the fact that when the husband made the downpayment, he was not yet married, unlike in *Brown v. Borland*, where the property was acquired and transferred during the marriage. Property which a party brings into the marriage is generally excluded from the marital estate. See, e.g., *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994); *Johnson v. Johnson*, 209 Neb. 317, 307

N.W.2d 783 (1981); *LaBenz v. LaBenz*, 6 Neb. App. 491, 575 N.W.2d 161 (1998). Thus, the husband is entitled to a credit for the downpayment of $5,380. We therefore modify the district court's judgment to reflect this credit, resulting in a judgment to equalize the property division in the sum of $144,620.

### NEW TRIAL

The husband argues that he should be entitled to a new trial on the wife's earning capacity as a sanction for her admitted frustration of the discovery process by not allowing him to view certain boxes. Determination of an appropriate sanction for failure to comply with a proper discovery order initially rests with the discretion of the trial court, and its rulings with respect thereto will not be disturbed on appeal absent a showing of an abuse of that discretion. *Booth v. Blueberry Hill Restaurants*, 245 Neb. 490, 513 N.W.2d 867 (1994). On the record before us, we cannot conclude that the trial court abused its discretion in denying the husband's motion for a new trial. This assignment of error is without merit.

### CONCLUSION

The district court correctly included the Heald & Son stock in the marital estate and its overall division of the marital estate was equitable. The district court, however, erred in failing to give the husband credit for the $5,380 premarital downpayment on the home. We therefore modify the property division, which affects the amount of the judgment in favor of the wife and against the husband. The amount of the judgment to equalize the property division is reduced to $144,620. In all other respects, the decree of the district court is affirmed.

AFFIRMED AS MODIFIED.