IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

EDMONDS V. EDMONDS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PAUL L. EDMONDS, APPELLANT,
V.
ROWENA D. EDMONDS, APPELLEE.

Filed November 12, 2013.    No. A-13-051.

Appeal from the District Court for Valley County: KARIN L. NOAKES, Judge. Affirmed as modified.

Christopher P. Wickham, of Sennett, Duncan & Jenkins, P.C., L.L.O., for appellant.

Mitchell C. Stehlik and Galen E. Stehlik, of Lauritsen, Brownell, Brostrom & Stehlik, P.C., L.L.O., for appellee.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

Paul L. Edmonds appeals from the decree of dissolution entered by the district court for Valley County dissolving his marriage to Rowena D. Edmonds. Paul challenges the district court's valuation of certain marital assets, division of the marital estate, and alimony award. For the reasons set forth below, we affirm as modified.

FACTUAL BACKGROUND

Paul and Rowena married in 1992. No children were born during the marriage. On September 17, 2009, Paul filed a complaint for dissolution of this marriage.

Trial was held on October 23, 2012. The primary issues at trial were the valuations of the parties' personal property and division of this property. Rowena also requested $500 per month in alimony for 5 years and $1,000 in attorney fees. Both parties presented evidence on these issues.

Paul was 66 years old at the time of trial. He is employed as a mechanic for a construction company based in the Dallas, Texas, area, earning $21 an hour. In this job, Paul

- 1 -

follows the company's major construction projects and makes the necessary repairs to the industrial equipment that is utilized on the jobsites. Because of the mobile nature of this job, Paul utilizes the parties' 1995 Holiday Rambler camper (Rambler) as his housing. Although Paul spends substantial time working in Texas, he returns to Ord, Nebraska, during some time every year.

Paul's 2011 tax return and various paystubs from 2012 were received in evidence at trial. In 2011, Paul's income was approximately $37,500. In prior years, Paul earned substantially more. However, Paul testified that his yearly income will decrease in the future due to his health problems and inability to continue working overtime. He stated that his current health issues include a hip joint replacement, prostate cancer, arthritis, and heart issues that required hospitalization.

Rowena was 61 years old at the time of trial and working as a "cleaning lady" at a retirement home in Loup City, Nebraska. She earns $8 an hour at this job and also receives health insurance. Our record does not indicate how many hours a week Rowena works, and no paystub from this employment was offered in evidence. When she married Paul, however, Rowena was working for the Bureau of Reclamation making an annual salary of approximately $31,200. After working for the Bureau of Reclamation for 18 years, Rowena left this position and cashed in her retirement savings to satisfy the parties' substantial debts and to travel with Paul to his various job locations. Since leaving her position at the Bureau of Reclamation, Rowena has not reached the same salary level. In addition, Rowena testified that the majority of her retirement savings have now been expended.

At trial, the court received the parties' joint property statement in evidence. This property statement contained a list of the parties' marital assets which were subject to the court's division. Additionally, each party also disclosed premarital debts and claimed certain property to be nonmarital property exempt from court division. Despite jointly preparing this property statement, Paul and Rowena disagreed about the values of numerous items. Specific facts regarding the valuations of the parties' personal property will be discussed as needed in the analysis section below.

On December 18, 2012, the district court entered a decree of dissolution. After dividing the parties' marital assets, the court ordered Paul to pay Rowena a $2,008 equalization payment. The court also awarded Rowena $500 per month in alimony for 3 years. Each party was ordered to pay his or her own attorney fees and costs. Paul appeals from this decree.

## ASSIGNMENTS OF ERROR

Paul asserts that the district court erred in (1) valuing certain marital assets, (2) failing to give him credit for a marital debt that he has paid, and (3) awarding Rowena alimony.

## STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of discretion. *Mamot v. Mamot*, 283 Neb. 659, 813 N.W.2d 440 (2012).

A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Bussell v. Bussell*, 21 Neb. App. 280, ___ N.W.2d ___ (2013).

When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Keig v. Keig*, 20 Neb. App. 362, 826 N.W.2d 879 (2012).

ANALYSIS

*Valuation of Marital Assets.*

Paul contends that the district court did not properly value the parties' marital assets. Specifically, he argues that the court erred in its valuation of the three vehicles awarded to him and its valuation of the business equipment, inventory, and supplies. His basic contention is that the court should have accepted his testimony regarding the value of these vehicles and equipment.

Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012). Property which one party brings into the marriage is generally excluded from the marital estate. *Id*.

Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness determined by the facts of each case. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012).

The decree awarded three vehicles to Paul: a 1995 Ford F350 truck, the Rambler, and a 1979 Pace Arrow motor home (Arrow). At trial, Paul provided his opinion as to the value of each of these vehicles. He valued the Ford F350 at $600, because it had been driven over 200,000 miles and had damage that required repairs. Paul placed a $1,500 value on the Rambler based on his assessment of the damage it had sustained prior to the parties' separation. Paul believed this value reflected the resale value of the Rambler after considering its repaired frame, broken window, and damaged tank. Finally, Paul testified that the Arrow should be valued at $500, because of its age and heavily used condition.

Rowena disagreed with Paul's proposed valuations of these vehicles. On the joint property statement, Rowena valued the Ford F350 at $9,565, the Rambler at $15,000, and the Arrow at $8,200. She testified that the Rambler's value should be $15,000 based on a 2009 telephone conversation she had with Deb Kuhlmann. Kuhlmann works at a recreational vehicle and mobile home sales and service lot in Grand Island, Nebraska. Rowena stated that during this conversation, she described the Rambler, including the improvements she and Paul had made to it, and Kuhlmann replied with a $15,000 valuation. When asked about her valuation of the Arrow, Rowena admitted that it was "pretty much salvageable," but believed the parts inside the vehicle were worth more than Paul's $500 valuation. In addition to her testimony, Rowena submitted exhibits that purported to contain a list of the repairs that she and Paul made to both

the Rambler and the Arrow during their marriage and a picture she had taken of the Rambler 2 years prior to separation.

In addition to the parties' testimony, two additional witnesses testified about these vehicles. Having examined pictures of both the Rambler and the Arrow, Kuhlmann testified that the Rambler with a repaired frame might be worth $3,000 at top value and the Arrow might get $1,200 if the seller is "lucky." Kuhlmann admitted that she had not personally examined either vehicle and could not remember whether she had given Rowena a $15,000 valuation in 2009. A mutual friend of both Paul and Rowena testified that she had personal knowledge that each of these vehicles had significant problems. She stated that the Ford F350 had transmission problems, a broken fender, and an engine that leaked oil. The friend also confirmed Paul's testimony about the Rambler's damage and noted that the Arrow was in a "very worn" condition.

The district court in its decree did not separately assign values to these three vehicles. Instead, the court valued all three vehicles at a combined $11,000. We cannot say that this valuation was unreasonable. After hearing conflicting testimony regarding the value of these vehicles, the court adopted a valuation for all three vehicles that was in the range between the parties' valuations. In fact, this valuation was closer to Paul's values than it was to Rowena's. We find that the district court did not abuse its discretion when it valued these three vehicles.

We likewise reject Paul's arguments regarding the district court's valuation of the business equipment, inventory, and supplies. Similar to our discussion regarding the vehicles above, the parties submitted vastly different valuations for these assets and there was conflicting testimony at trial. Paul assigned a $2,645 total value to the equipment, inventory, and supplies while Rowena submitted $18,600 as her total valuation. The court assigned a $4,100 value to these items when it awarded them to Paul in the decree. This valuation was not an abuse of discretion, and the assigned error is without merit.

*Social Security Overpayment.*

Paul argues that the district court erred in failing to give him credit for a repayment he has made to the Social Security Administration. In July 2010, the Social Security Administration notified Paul that he received $4,811 in excess payments during 2009 and demanded repayment. Paul listed this repayment as an unsecured debt on the joint property statement prepared for trial, but the court did not include it in the property division portion of the decree.

Paul maintains that this Social Security repayment should be considered a marital debt for which he should have received a credit in the property division. Rowena claims this repayment is best classified as a nonmarital debt. She notes that this overpayment occurred over a period of time that extended beyond the parties' date of separation and that Paul did not receive notification of the debt until 2010.

Marital debt includes those obligations incurred during the marriage for the joint benefit of the parties. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006); *Finley-Swanson v. Swanson*, 20 Neb. App. 316, 823 N.W.2d 697 (2012). The burden to show that a debt is nonmarital is on the party making that assertion. *Id.*

We agree with Paul's claim that this repayment should have been considered a marital debt. The Social Security Administration notified Paul by letter on July 19, 2010, that he had received a $4,811 overpayment in 2009. Additionally, both parties testified at trial that they

- 4 -

separated in September 2009 and that their finances had been jointly maintained until that time. Thus, both Paul and Rowena benefited from this overpayment as it was included in their marital income before their separation. See, e.g., *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2002) (income tax liabilities incurred during marriage are one of costs of producing marital income, and thus should be treated as marital debt). The district court should have considered this demand for repayment as a marital debt, and its failure to do so constituted an abuse of discretion.

Because Paul and Rowena separated in September 2009, however, Paul had the sole benefit of the Social Security payments for the remainder of 2009. We find that three-fourths of the $4,811 repayment, or $3,608, should have been considered a marital debt and that Paul is entitled to a credit against his portion of the marital estate to reflect this debt. Applying this credit to the property division by the court, we modify Paul's equalization payment to Rowena from $2,008 to $204.

*Alimony Award.*

In his final assignment of error, Paul claims that the district court erred when it awarded Rowena $500 per month in alimony for 3 years. He argues that this award is unreasonable because of his deteriorating health, Rowena's ability to find employment, and Rowena's eligibility for a greater Social Security payment because of the parties' marriage.

When deciding whether to award alimony, a court should consider the factors set forth in § 42-365. The pertinent part of this section provides:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

Along with these specific criteria, a court is to consider the income and earning capacity of each party as well as the general equities of each situation. *Finley-Swanson v. Swanson*, *supra*.

Alimony should not be used to equalize the incomes of the parties or to punish one of the parties. *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012). However, disparity in income or potential income may partially justify an award of alimony. In determining whether alimony should be awarded, in what amount and over what period of time, the ultimate criterion is one of reasonableness. *Id*. When reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Bussell v. Bussell*, 21 Neb. App. 280, ___ N.W.2d ___ (2013).

We are not persuaded by Paul's arguments relating to the alimony award. The record shows that Paul has been able to maintain his career as a mechanic from which he earns a substantially higher income than Rowena. Following their separation, Rowena has found employment at a retirement home making $8 an hour. Prior to her marriage to Paul, and for a period during the marriage, she had an established career with the Bureau of Reclamation from

which she made a significantly larger salary. Rowena gave up this career, cashing in her retirement, to travel with Paul for his employment and to help the parties' debt situation during their marriage. Giving up that career when she did, Rowena surrendered the opportunity to retire at 65 with a monthly $1,400 retirement payment.

Our review of the facts in this case in light of the factors involved in an alimony award leads us to conclude that the district court did not abuse its discretion when it awarded Rowena alimony in the amount of $500 per month for 3 years.

To the extent that Paul argues that his health concerns will prevent him from satisfying this award, we note that no affirmative evidence was presented at trial that he was unable to continue working on a full-time basis. Nor has Paul taken any steps to retire. Thus, Paul's assertion that he will be unable to pay alimony in the future is speculative at this time. This assigned error is without merit.

## CONCLUSION

The district court did not abuse its discretion when it valued the parties' personal property or when it awarded Rowena alimony. However, we modify the decree to reflect Paul's Social Security repayment as having satisfied a marital debt and adjust the equalization payment accordingly. In all other respects, we affirm the district court's decree.

AFFIRMED AS MODIFIED.