IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MCGINNIS V. MCGINNIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LISA M. MCGINNIS, APPELLANT,

V.

TIMOTHY L. MCGINNIS, APPELLEE.

Filed July 2, 2019.    No. A-18-174.

Appeal from the District Court for Otoe County: MICHAEL A. SMITH, Judge. Affirmed.

Christopher A. Vacanti and William L. Finocchiaro, of Vacanti Shattuck, for appellant.

Kathryn D. Putnam, of Astley Putnam, P.C., L.L.O., for appellee.

PIRTLE, ARTERBURN, and WELCH, Judges.

PIRTLE, Judge.

### INTRODUCTION

Lisa M. McGinnis appeals from a decree of dissolution of marriage entered in the district court for Otoe County dissolving her marriage to Timothy L. McGinnis and dividing their marital property. Lisa argues that some of the property was improperly classified as nonmarital property and should have been included in the marital estate. Lisa further argues that the trial court improperly denied her request for alimony. For the reasons that follow, we affirm.

### BACKGROUND

Lisa filed for a dissolution of marriage on September 27, 2016. There were no minor children affected by these proceedings. A trial was held on August 30, 2017. The trial court issued a decree of dissolution of marriage on November 28, 2017, dissolving the marriage and dividing the marital assets. Lisa subsequently filed a motion to alter or amend decree of dissolution on December 1, 2017, on the basis that some aspects of the decree were inconsistent with other

- 1 -

provisions of the decree, and on the basis that she believed some property was improperly allocated to nonmarital assets. The trial court ultimately issued an "Amendment to Decree of Dissolution of Marriage" which made some changes to the balance sheet and reiterated and further expanded on some of its findings in the original decree. It is from this decree of dissolution of marriage and its amendment that she appeals.

## STATEMENT OF FACTS

Lisa and Timothy were married on June 6, 2009. Both Lisa and Timothy had prior marriages. Each owned a home prior to being married and Timothy owned interests in four parcels of farmland and his business, TLM Farms, Inc. At the time they were married, Lisa worked for a flooring store while Timothy was employed by Omaha Public Power District (OPPD) in addition to working for TLM Farms. Lisa eventually quit her job and opened a business which ultimately failed in 2014. Lisa did not return to work after this, other than for a short time in a chiropractor's office. Timothy retired from his job at OPPD in 2013 to work for TLM Farms full time.

TLM Farms is a business that performs soil conservation work for agricultural property. TLM Farms is a C-corporation and taxed as such. Timothy is the only employee of TLM Farms and does not pay any subcontractors. The net worth of TLM Farms at the time of the marriage was $50,766. Timothy's second business interest was a farming agreement with his brother, Kent McGinnis, allowing Kent to farm on the land Timothy owned in exchange for part of the harvest. Timothy was responsible for paying a share of the expenses of the farming operation, but did not actively participate in the farming.

Both Lisa and Timothy have suffered from some health issues over the course of their marriage. Prior to the marriage, Lisa suffered from back pain, migraines, and ankle problems. Her ankle pain and back pain have become worse and she suffers from insomnia, fibromyalgia, and gastrointestinal issues which developed over the course of the marriage. Timothy was diagnosed with prostate cancer in June 2016 and has had his prostate removed. The marriage ultimately broke down and Timothy and Lisa were unable to reconcile resulting in the dissolution of marriage action.

## ASSIGNMENTS OF ERROR

On appeal, Lisa assigns that the trial court erred in finding (1) that the increase in value of TLM Farms which occurred during the parties' marriage should be considered a nonmarital asset, (2) that the increase in value of Timothy's farmland and interests in farmland which occurred during the parties' marriage should be considered a nonmarital asset, and (3) that no alimony should be awarded to Lisa.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right

and denying just results in matters submitted for disposition. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016).

ANALYSIS

*Determination of Property to be Included in Marital Estate.*

Lisa's first two assignments of error each deal with the determination of the trial court that the appreciation from two types of premarital assets should not be included in the marital estate.

In Nebraska, the division of property in a dissolution of marriage is controlled by Neb. Rev. Stat. § 42-365 (Reissue 2016). Section 42-365 provides that when a dissolution of marriage is decreed, the court may order the

> division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

Equitable property division under § 42-365 is a three step process. *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000). The first step is to classify the parties' property as marital or nonmarital. *Id*. The second step is to value the marital assets and determine the marital liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Meints v. Meints, supra*.

All property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to this general rule. *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017). Thus, income from either party that accumulates during the marriage is a marital asset. *Id*. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Id*. Therefore, the original capital or value of an asset may be nonmarital, while all or some portion of the earnings or appreciation of that asset may be marital. *Id*.

Appreciation or income of separate property is marital property to the extent that it was caused by marital funds or marital efforts. *Id*. The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of the appreciation or income. *Id*. The spouse seeking a determination that the appreciation is active must first demonstrate that there was appreciation of the separate property. See *id*. See, also, 1 Brett R. Turner, Equitable Distribution of Property § 5:56 (4th ed. 2019). Appreciation of nonmarital assets during the marriage are presumed marital, for purposes of equitable distribution of the marital estate in a marriage dissolution proceeding, unless the party seeking the classification of the growth as nonmarital proves: (1) the growth is readily identifiable and traceable to the nonmarital portion of the property and (2) the growth is not due to the active efforts of either spouse. *Stephens v. Stephens, supra*. The burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income. *Id*. Appreciation or income of a nonmarital asset during the marriage is marital, for purposes of equitable distribution of the marital estate in

a marriage dissolution proceeding, insofar as it was caused by the efforts of either spouse or both spouses. *Id.*

*TLM Farms.*

In dividing TLM Farms, the first step is to determine whether it is marital or nonmarital. The burden of proof is on Timothy to demonstrate that it was nonmarital. The trial court found that TLM Farms was nonmarital property. In her brief Lisa challenges the court's determination that TLM Farms was nonmarital. However, this was not specifically assigned as error. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *City of Gordon v. Montana Feeders, Corp.*, 273 Neb. 402, 730 N.W.2d 387 (2007). As a result, we do not consider this argument.

Although the original value of an asset may be considered nonmarital, appreciation of that asset may be considered marital property. Once an asset has been determined to be nonmarital, the burden of proof is on the non-owning spouse to demonstrate that there was appreciation of the asset during the marriage. See *Stephens v. Stephens, supra*. See, also, 1 Turner, *supra*. We find that Lisa failed to meet this burden. The evidence of appreciation rested on the valuation of TLM Farms. Lisa suggests a valuation which is derived from TLM Farms' 2015 tax return depreciation schedules and from balance sheets provided to the bank handling the company loans. There were no experts hired to value the company or its income potential nor was there any evidence from Lisa as to what the liquidation value of the company would be either at the time of trial or at any point during the marriage. Lisa testified that she was unsure if the company increased or decreased in value. Timothy testified that the liquidation value of the company would be $40,000 after paying off all of the debts of TLM Farms, an amount lower than the value at the time of the marriage. Given these facts, we cannot say that Lisa met her burden to demonstrate that there was appreciation of the asset. We note that this should not be interpreted to mean that expert testimony will be required in every instance for the valuation of a premarital asset, but there must be a clear methodology used that reflects the evidence in the record as to the value of the asset, which was lacking in this case.

The trial court initially concluded that there had been no material increase in value of TLM Farms and later clarified in the amended decree that any appreciation was caused by outside market forces and normal appreciation. Where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm. *State v. Huff*, 279 Neb. 68, 776 N.W.2d 498 (2009). The trial court was correct that TLM Farms was a nonmarital asset. However, it did not need to analyze whether any appreciation was active or passive as Lisa had not met her burden to show that there was appreciation as the initial step in the analysis. As such, we affirm the trial court's order as to TLM Farms for the reasons set forth above.

*Premarital Farmland.*

The second asset which Lisa challenges the classification of is four parcels of farmland. The four parcels of land are: Rinnie Farms of which Timothy owns an undivided 1/2 interest; Rockcreek which Timothy wholly owns; Wilhelm of which Timothy owns an undivided 1/2

interest; and Jackson of which Timothy owns an undivided 1/2 interest (collectively, "the farmland"). It is undisputed that all four parcels of land were purchased prior to the marriage.

At trial, testimony demonstrated that Timothy did not farm this land, but rather that it was farmed by his brother, Kent. Pursuant to an agreement between Timothy and Kent, Timothy receives a portion of the harvest in exchange for providing his share of the land and pays a portion of some of the expenses. Although there was some testimony that Timothy would assist on the farm from time to time, such as moving a truck, he did not perform any of the actual farming. There was also testimony that Timothy was responsible for insuring his portion of the crops and for selling his portion of the grain. However, testimony demonstrated that he would do work on the property in the form of installing drainage tiles, as he does for other farmland through TLM Farms, as well as various other work on the drainage of the property. Lisa demonstrated the appreciation of the farmland with the introduction of the tax assessed values of the property in 2009 and 2016.

Next, we must determine if such appreciation was due to marital funds or efforts. As the testimony demonstrated that Timothy was only paying expenses and receiving grain as payment pursuant to the agreement with his brother, and not actually farming the land, we need not determine whether actively farming the land would create a marital interest in the property. Rather, these actions and expenses by Timothy are related to the farming agreement he had entered into with his brother, separate from the land, and thus any activity related to the farming would create a marital interest in that business, not necessarily the land.

The more important question in this case is whether Timothy's limited work on the farmland created a marital interest in the property by contributing to the appreciation in value of the property. All three witness who testified agreed that such work on the property was maintenance in nature as the work needed to be done in order to keep the land farmable. Other jurisdictions that have adopted the active appreciation rule have found that marital efforts expended to perform maintenance do not create appreciation as such efforts are preserving value rather than adding value. See, *Barner v. Barner*, 716 So. 2d 795 (Fla. App. 1998); *Spindler v. Spindler*, 207 Wis. 2d 327, 558 N.W.2d 645 (Wis. App. 1996). See, also, 1 Brett R. Turner, Equitable Distribution of Property § 5:56 (4th ed. 2019). As each witness testified that Timothy's work on the property was maintenance to ensure the ability to farm the land and keep it productive, we find that the evidence demonstrates that the land did not appreciate as a result of marital efforts, but rather through market forces. Therefore, we affirm the trial court's determination that the farmland and its appreciation as well as all debts associated with the farmland are nonmarital assets and were properly assigned to Timothy.

*Determination of Alimony.*

Lisa's final assignment of error challenges the trial court's determination that no alimony would be awarded to her. In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party a substantial right or just result. *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000). An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Priest v.*

*Priest*, 251 Neb. 76, 554 N.W.2d 792 (1996). To determine whether an award of alimony is appropriate, the Court must look at the circumstances of the parties, duration of the marriage, history of contributions, interruption of careers or educational opportunities in determining whether alimony is appropriate. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). Alimony is not to be used simply to equalize the income of the parties, but to assist the economically disadvantaged spouse during a period of unavailability for employment or training. *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992).

The marriage lasted approximately 7 years and was a second marriage for both parties. When the parties were married, Timothy had substantial assets in the form of his farmland while Lisa's main asset was her home located in Nebraska City. Timothy was working at OPPD and Lisa was working at a flooring company where she earned $9 per hour. Lisa subsequently quit that position and ran her own business for a number of years, but it closed in 2014. Timothy supplied some of the capital for her business. Lisa also worked for a chiropractor for a short time, but then did not have any other employment until the end of the marriage. Timothy also quit his position at OPPD in 2013 and began working for TLM Farms full time. Neither of the parties argue that there were missed career or educational opportunities as a result of the marriage. Presently, Timothy continues to work at his business, TLM Farms, and earns income through his farming agreement while Lisa is employed at a jeweler earning $9.75 per hour plus commissions. Each complains of various physical ailments which prevent them from working as much or as hard as they would like to. Timothy's primary assets continue to be his farmland, his home, and TLM Farms. While these have increased in value, the evidence also showed them to have significant debts attributed to them.

Given the circumstances surrounding the marriage, including this was a second marriage for both parties, and the fact that Lisa had returned to work at a job where she earns slightly more than she did prior to the marriage, we cannot say that the trial court's determination to award no alimony to Lisa was patently unjust. She had returned to work and there was no evidence presented that she had been impaired in her earning capacity as a result of the marriage. Rather, Lisa primarily argues that her health issues had prevented her from working certain jobs necessitating the alimony. However, it is clear from the record that she is presently working and while we are sympathetic to her situation, we cannot say it was an abuse of discretion for the trial court to deny her alimony. As such, we affirm the trial court's determination that no alimony should have been awarded to Lisa.

## CONCLUSION

We conclude that the trial court did not err in assigning the appreciation in value of both TLM Farms and the farmland as nonmarital assets and in awarding no alimony. As such, the trial court's order is affirmed.

AFFIRMED.