IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

EYMAN V. EYMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TERRY R. EYMAN, APPELLEE AND CROSS-APPELLANT,
V.
ANNETTE J. EYMAN, APPELLANT AND CROSS-APPELLEE.

Filed February 4, 2014.    No. A-13-373.

Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed.

Michael B. Lustgarten, of Lustgarten & Roberts, P.C., L.L.O., for appellant.

Anthony W. Liakos, of Govier & Milone, L.L.P., for appellee.

IRWIN, MOORE, and BISHOP, Judges.

BISHOP, Judge.

Annette J. Eyman appeals and Terry R. Eyman cross-appeals from the decree of dissolution entered by the district court for Douglas County dissolving the parties' marriage. Annette argues that the trial court erred by failing to include in the marital estate Terry's 25-percent interest in Pipers Plus Company, L.L.C. (Pipers Plus), a business established by Terry, his two brothers, and their mother during the parties' marriage. On cross-appeal, Terry argues that the trial court abused its discretion when it awarded Annette $10,000 of the $50,000 in proceeds traceable to the sale of Terry's premarital residence. Upon our de novo review of the record, we find no abuse of discretion by the trial court and affirm.

BACKGROUND

Annette and Terry were married on May 31, 1997. The parties are the parents of two minor children, born in 2003 and 2007.

Terry filed a "Complaint for Dissolution of Marriage" on January 25, 2012. Prior to trial, the parties resolved several disputed issues and stipulated to a custody and parenting plan, child support, alimony, division of retirement accounts and investment accounts, childcare, health

insurance and costs, life insurance, and the division of the tax dependency exemption. The parties further stipulated that Terry should retain as his separate property his interest in his family's business, Eyman Plumbing, Inc.

Evidence and testimony was adduced at trial on February 27, 2013, to resolve the issues still in dispute by the parties, including whether Terry's ownership interest in Pipers Plus was a marital asset and its value, and the extent of Terry's premarital interest in the parties' marital residence. Neither party appealed the other disputed issues at trial, and we therefore do not include them in our discussion.

*Establishment of Pipers Plus.*

Terry testified that he received his bachelor's degree from the University of Nebraska-Lincoln in 1991. After college, he began working in an office manager type of role for Eyman Plumbing. Eyman Plumbing was established by Terry's grandfather in 1957 and was operated as a sole proprietorship until it was incorporated as a subsection "S corporation" in November 1998. In 1994, Terry left the family business to begin a plumber's apprenticeship and became a licensed plumber in 1999. Terry has worked at Eyman Plumbing since becoming licensed. Eyman Plumbing is presently owned equally by Terry, his two brothers Tim Eyman and Tom Eyman, and their mother, Anne Eyman.

In October 1998, Terry, Tim, Tom, and Anne formed Pipers Plus. Tom, the president of both Eyman Plumbing and Pipers Plus, testified that Anne decided they should form a separate limited liability company to protect Eyman Plumbing from liability. According to Pipers Plus' articles of organization, Terry, Tim, Tom, and Anne each contributed $10,000 to Pipers Plus, and each individual received a 25-percent ownership interest. Similarly, Pipers Plus' operating agreement reflects that 400 units were divided equally among Terry, Tim, Tom, and Anne and that each individual's initial capital contribution was $10,000. However, both Terry and Tom testified that Anne was the only individual who contributed money to Pipers Plus when it was formed, and then gifted a 25-percent interest to each brother over 4 to 5 years through stock options. Although Tom testified there was documentation to show their interest was gifted to the brothers over time, such documentation was not offered or received into evidence.

According to Tom's testimony, in August 1999, Pipers Plus purchased real property for $396,780, and in October 1999, Pipers Plus expended $893,813.25 to construct a building in which the business could operate. Tom testified that Anne fully funded the purchases of both the real property and the building construction and that neither he, Terry, nor Tim contributed any money toward these purchases. At trial, Tom testified that Anne loaned the money for these purchases and that Eyman Plumbing paid the loan, although in his deposition, he testified that Pipers Plus was the entity that paid the loan. In 2010, Pipers Plus purchased its neighboring land for $605,724.85. Tom testified that Anne loaned the funds to Pipers Plus to pay the purchase price and that Pipers Plus is currently indebted to her for $480,693. Pipers Plus has no employees, and Eyman Plumbing is the only tenant of the building owned by Pipers Plus. Eyman Plumbing is currently $498,780.95 in arrears in rent to Pipers Plus. According to the commercial appraiser hired by Annette, Pipers Plus' net value as of February 12, 2013, was $1,880,513 and Terry's share is worth $470,128.

Annette stipulated that she had no involvement in Pipers Plus. Annette testified that she and Terry maintained a joint account at the time Pipers Plus was formed and that she does not believe they paid anything into the business.

Although Pipers Plus and Eyman Plumbing are legally distinct entities that file taxes separately, Terry considers them to be the same entity.

*Terry's Premarital House.*

Prior to the parties' marriage, in February 1992, Terry purchased a house on Frederick Street in Omaha, Nebraska, for $37,000. Terry financed the purchase with gifts from his parents and by a mortgage. Annette moved into the Frederick Street house with Terry approximately 2 years before they married. Terry testified that most of the improvements to the Frederick Street house were made when he initially moved in, such as "the landscaping, the sprinkler, the roof, the painting, [and] the driveway."

According to Annette's testimony, Terry purchased the Frederick Street house very near to when they first started dating. She testified she helped make major improvements to the house, including painting every room, tearing down a wall, tearing up tile and putting down new tile, refinishing the bathroom, grouting, purchasing new furniture, redoing the roof, redoing all the landscaping, and purchasing and planting flowers. Annette was unable to find documentation of amounts she paid for improvements to the Frederick Street house.

The assessed value of the Frederick Street house was $48,500 nearest to when the parties married, with approximately $16,000 in equity. The parties lived in the Frederick Street house until December 2, 1999, when they sold it for $85,000, with approximately $50,000 in equity.

On November 7, 1999, the parties entered into a purchase agreement to buy a residence on North 73d Plaza in Omaha for $260,000. Including closing costs and other fees, the total cost to purchase the North 73d Plaza residence was $274,393.16. The parties made a downpayment of $100,393.16 and paid the remaining balance with a bank loan. Terry testified that the downpayment was comprised of $50,000 in proceeds from the sale of the Frederick Street residence and that the remaining funds came from the parties' savings account.

During the dissolution proceedings, the parties agreed to sell the North 73d Plaza residence. The sale of the home netted approximately $350,000. Terry requested that the court divide the remaining equity equally after awarding to him as his separate property $50,000 to reflect the amount of proceeds he contributed to the downpayment from the sale of the Frederick Street house.

The court entered a decree of dissolution on April 29, 2013. The court found that Pipers Plus was not a marital asset. The court found that Terry's 25-percent interest in Pipers Plus was gifted to him by his mother and that any increase in the value of Pipers Plus did not result from the efforts of Annette, who in no way contributed to the improvement or operation of the company.

The court further found that $50,000 of the purchase price for the parties' marital home located on North 73d Plaza was obtained from the sale of Terry's premarital home at Frederick Street. However, the court found that Annette participated in the repair and upkeep of the Frederick Street house and that therefore, she was entitled to $10,000 of the $50,000 in remaining equity from the sale of the marital residence.

Other findings by the court are not at issue in this appeal and are therefore not included in our discussion. Annette timely appealed, and Terry timely cross-appealed.

## ASSIGNMENTS OF ERROR

On appeal, Annette asserts that the trial court erred in determining that Pipers Plus was not a marital asset and in failing to include the value of Pipers Plus in the overall division of the marital estate.

On cross-appeal, Terry asserts that the trial court abused its discretion in awarding Annette $10,000 of the proceeds from the sale of Terry's premarital home used in the downpayment on their marital home.

## STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of discretion. *Mamot v. Mamot*, 283 Neb. 659, 814 N.W.2d 440 (2012).

A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013).

When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

## ANALYSIS

*Exclusion of Pipers Plus From Marital Estate.*

Annette argues that the trial court abused its discretion when it determined that Terry's ownership interest in Pipers Plus was a nonmarital asset gifted to Terry by his mother during the parties' marriage.

Pursuant to Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles in § 42-365. *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013).

The parties were married on May 31, 1997, and Pipers Plus was established in October 1998. Thus, Terry acquired his sole interest in Pipers Plus during the marriage, and his interest is presumptively marital property unless an exception to the general rule excludes it from the marital estate. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000). As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Sitz, supra.*

Terry claims that his interest in Pipers Plus was a gift, which is normally excluded from the marital estate. With some exceptions, the marital estate does not include property acquired by one of the parties through gift or inheritance. *Heald, supra*. The burden of proof to show that property is a nonmarital asset remains with the person making the claim. *Schuman v. Schuman*, 265 Neb. 459, 658 N.W.2d 30 (2003).

Annette argues that Terry offered no documentary evidence to substantiate his claim that Pipers Plus was gifted to him by his mother, similar to *Heald, supra*. In *Heald*, the Nebraska Supreme Court affirmed a trial court's determination that stock received by the husband during marriage was not a gift from his parents. Although both the husband and his mother testified the stock was a gift, a stock purchase agreement referred to the husband as a buyer, an attorney's letter referenced a purchase of the stock by the husband, and the wife testified that her husband told her he had purchased the stock. Recognizing that credible evidence was in conflict, the Nebraska Supreme Court concluded that the trial court did not err by including the stock in the marital estate after considering and giving weight to the fact that the trial judge heard and observed the witnesses and accepted the wife's testimony and related inferences from the evidence. *Id.*

In this case, according to the testimony of Terry and his brother, Terry's mother was the only person who paid any money to form Pipers Plus. Although Pipers Plus' articles of organization and operating agreement both indicated that each brother contributed $10,000 in capital contributions when Pipers Plus was formed, Terry's brother testified that in reality, their mother was the sole individual to make capital contributions due to tax consequences if she gifted such amounts to each brother all at once. Terry's brother testified that each brother's 25-percent interest in Pipers Plus was gifted to them over 4 to 5 years through stock options. Further, unlike *Heald, supra*, where the wife testified her husband purchased stock and therefore marital funds were implicated, Annette testified that she and Terry shared a joint account at the time Pipers Plus was formed and that to her knowledge, they did not put any money into the business. Given this conflict in evidence, we consider and give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004). We therefore conclude the district court did not abuse its discretion in excluding Terry's 25-percent interest in Pipers Plus from the marital estate.

*Award of Proceeds to Annette From*
*Terry's Premarital Home.*

In his cross-appeal, Terry argues that the trial court abused its discretion when it awarded Annette $10,000 of the $50,000 in proceeds from the sale of Terry's premarital residence, which the parties used as part of their downpayment on their marital residence.

Property owned by a party at the time of marriage is not marital property. *Smith v. Smith*, 9 Neb. App. 975, 623 N.W.2d 705 (2001). If premarital property can be identified, it is typically set off to the spouse who brought the property into the marriage. *Charron v. Charron*, 16 Neb. App. 724, 751 N.W.2d 645 (2008). An exception to the rule applies where both of the spouses have contributed to the improvement or operation of the property which one of the parties owned prior to the marriage or where the spouse not owning the property prior to the marriage has

significantly cared for the property during the marriage. See *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982). Where the *Van Newkirk* exception is applied, evidence of the value of the contributions and evidence that the contributions were significant are generally required. *Bussell v. Bussell*, 21 Neb. App. 280, 837 N.W.2d 840 (2013). See, also, *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997).

The evidence at trial supports the trial court's finding that Annette is entitled to $10,000 for her repair and upkeep of Terry's premarital residence. Annette testified that she helped Terry make major improvements to the house, including painting every room, tearing down a wall, tearing up tile and putting down new tile, refinishing the bathroom, grouting, purchasing new furniture, redoing the roof, redoing all the landscaping, and purchasing and planting flowers. Annette presented evidence that demonstrated such improvements significantly improved the house's value during the parties' marriage. Annette presented evidence at trial reflecting that the assessed value of the house at the time the parties married in 1997 was $48,500, with approximately $16,000 in equity. The parties sold the house 2 years later for $85,000, with approximately $50,000 in equity. Annette testified that the increase in equity following their marriage was in part due to their joint improvements. The trial court agreed and awarded $10,000 of that $50,000 in equity to Annette. We cannot say that the trial court abused its discretion in making that determination. See *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001) (awarding wife portion of growth in equity in husband's premarital home due to her contributions to mortgage payments from marital income and certain home improvements).

## CONCLUSION

We conclude that the district court did not abuse its discretion in its determination that Pipers Plus was a nonmarital asset, nor did it abuse its discretion by awarding Annette a portion of the proceeds Terry claimed were solely his premarital property. We therefore affirm the decree of dissolution in all respects.

AFFIRMED.